**DEAK v. PACE, Jr., Secretary of Army.**

**PATTON v. PACE, Jr., Secretary of Army.**

Nos. 10406, 10407.

United States Court of Appeals
District of Columbia Circuit.

Decided Dec. 7, 1950.

Mr. Ford E. Young, Jr., Washington, D. C., for appellants. Messrs. George A. Finch, Jr., and R. H. McNeill, Washington, D. C., entered appearances for appellant Deak.

Mr. Samuel D. Slade, Attorney, Department of Justice, Washington, D. C., with whom Assistant Attorney General H. G. Morison and Messrs. George Morris Fay, U. S. Atty., Washington, D. C., and Edward H. Hickey, Special Asst. to the Atty. Gen., were on the brief, for appellee. Mr. Joseph M. Howard, Asst. U. S. Atty.,

Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PRETTYMAN and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

Appellants in these consolidated appeals were civilian employees of the War Department at the Army Finance Center, St. Louis, Missouri. They were summarily removed from their positions by the Secretary of War, acting under authority of Section 3, Act of December 17, 1942, 56 Stat. 1053, 5 U.S.C.A. § 652 note,[1] upon the ground that such action was "warranted by the demands of national security."

As we view the case it is reduced to the simple question whether the Secretary complied with the requirement of the statute that the discharged employees "be fully informed of the reasons" for their removal. If they were not, the further question arises whether the Secretary may be required by mandatory injunction to furnish the necessary information and to grant hearings before the Army Security Review Board. This is the relief that appellants seek. No constitutional question is involved, for appellants contend only that their rights under the statute have been denied. The case does not involve a comparison between the status of employees in the various governmental agencies whether of a "sensitive" or "non-sensitive" nature. It does not involve a comparison between the procedures for discharge of employees under the Lloyd-LaFollette Act, 5 U.S.C.A. § 652, supplemented by the President's Loyalty Review Program on the one hand, and the removal of employees under the present statute on the other. It does not involve the right of a person to governmental employment nor the right of an employee to a hearing before discharge. It does not involve the authority of an agency head to employ, discharge, or reinstate an employee. These are false issues and we shall not deal with them. Nor shall we attempt to lay down any general rule applicable to the statute. What may satisfy the statutory requirement for full information in the circumstances of one case may be wholly irrelevant to the circumstances of other cases. We confine ourselves, as we think the situation requires, to the facts of the present case and the narrow issue we have stated.

In a notice of removal delivered to appellant Deak she was informed that the reasons for her removal were:

"1. That you attended a meeting open only to Communist Party members, and ·

"2. That you have attended meetings openly sponsored by the Communist Party or organizations known to be affiliated with the Communist Party, and have evinced active and sympathetic affiliation with these organizations."

In like manner appellant Patton was informed that the reasons for her removal were:

1. "The provisions of section 6 of the Act of August 24, 1912 (37 Stat. 555; U. S.C., title 5, sec. 652), shall not apply to any civil-service employee of the War or Navy Departments or of the Coast Guard, or their field services, whose immediate removal is, in the opinion of the Secretary concerned warranted by the demands of national security, but nothing herein shall be construed to repeal, modify, or suspend the proviso in that section. Those persons summarily removed under the authority of this section may, if in the opinion of the Secretary concerned, subsequent investigation so warrants, be reinstated, and if so reinstated may, in the discretion of the Secretary concerned, be allowed compensation for all or any part of the period of such removal in an amount not to ex- ceed the difference between the amount such person would normally have earned during the period of such removal, at the rate he was receiving on the date of removal, and the interim net earnings of such person: *Provided*, That within thirty days after such removal any such person shall have an opportunity personally to appear before the official designated by the Secretary concerned and be fully informed of the reasons for such removal, and to submit, within thirty days thereafter, such statement or affidavits, or both, as he may desire to show why he should be retained and not removed."

The foregoing Act has been superseded by Act approved August 26, 1950, Pub. L. No. 733, 81st Cong., 2d Sess.

"1. That you have been active in organizations openly known to be part of the Communist Party, and

"2. You have attended meetings and rallies openly sponsored by the Communist Party or organizations known to be closely affiliated with the Communist Party."

It will be noted that times, places and organizations were not specified. Nevertheless the notice in each instance stated that the appellant might submit within thirty days statements and affidavits "by way of your defense" and that it would be helpful if the same were directed "toward the fullest possible answer to all items in the reasons for your removal."

The cases were heard by the District Court on motions to dismiss, supplemented by stipulated facts. The judge, being of opinion that the plaintiffs had been fully informed, dismissed their complaints.

In support of the dismissals it is contended not only that sufficient information was furnished, but that further information and hearings would not change appellee's position, "in that there is no way in which the Secretary could be required to act favorably with respect to appellants' removal after such a hearing was held." Great stress is laid upon the exclusive authority of the Secretary to remove and reinstate employees, or to refuse to reinstate them. But no one questions that authority. It is beside the point. The controlling question is whether the Secretary, acting through his designated officer, fully informed appellants of the reasons for their removal. The statute accords the right to such information. Coupled with the power to remove is the duty of the Secretary, acting through his subordinate, to furnish the information. The duty to inform and the right to be informed are for the manifest purpose of affording the employee a fair opportunity to oppose the removal order by submitting within thirty days after being fully informed, "such statement or affidavits, or both, as he may desire to show why he should be retained and not removed." They go to the statutory right of a removed employee to *apply* for reinstatement. They do not concern the Secretary's power to reinstate or to refuse to reinstate.

The meaning of the statutory provision for information seems very clear. It is reflected in the Secretary's general orders of January 18, 1947 (War Department Circular No. 17, Par. 7), and April 9, 1948 (War Department Circular No. 100, Par. 10), regulating administration of the statute. There it is provided that the letter of removal to an employee shall contain a statement of the reasons for removal which shall be as extensive as security interests will permit and shall "furnish the employee such information of the evidence against him as will provide him a fair chance to defend himself."

 We think that in keeping with the plain terms of the statute and the Secretary's order the information must be sufficient to inform the employee with reasonable certainty and precision of the cause for his removal. Only thus can he, upon receiving the information, take full advantage of the right granted by the statute to "submit, within thirty days thereafter, such statement or affidavits, or both, as he may desire to show why he should be retained and not removed." To avail themselves of this right it is important that appellants be informed of the dates, places and organizations referred to in the stated reasons for their removal. Otherwise they cannot have a fair opportunity to show reasons for reinstatement, which the statute holds out to them. They are deprived in large measure of the right to clear their names and appeal for reinstatement. To what specific thing could appellants' statements or affidavits be directed beyond their own general denials? Yet, with the specifications indicated, convincing proof might be obtainable to show their innocence. We need not speculate concerning the course that should be followed if "security interests" were thought to conflict with an employee's right to precise information, for we see no reason to suppose, or to think that the Secretary supposed, that the information we specify for the instant cases would involve any risk to such interest. That it did not is obvious from the information given, which speaks of the organizations as "openly known" and the meetings as "openly sponsored." Moreover, no claim is

made that additional information would have involved any risk to security interests. In these circumstances, at least, we see no reason why details as to times, places and organizations, should not have been furnished. The information in the letters of removal even fell short of the Secretary's instructions.

■ The suggestion is made that any lack of information in the letters of removal was supplied by the questions put to appellants by the Army Security Review Board before whom appellants subsequently appeared. These questions were in the nature of cross-examination of appellants. In no instance was a question specifically connected with the information stated in the reasons for removal. Nor do we think that information given in cross-examination at the hearing can serve as a substitute for the full information required by the statute to be given thirty days before the prescribed time for submitting defensive statements and affidavits. The statute clearly contemplates that discharged employees shall have that thirty day period within which to submit such papers. Yet appellants were given no opportunity whatever to submit anything but their own spontaneous answers to the questions. So, even assuming the questions to have been informative, they came too late. Appellants were deprived of their right to have the ensuing thirty days within which to submit defensive statements and affidavits concerning the information received.

■ We conclude that in the circumstances of these cases appellants were entitled to the additional information we have indicated, and that it was the duty of the Secretary, acting through his designated officer, to have furnished such additional information. From these conclusions it necessarily follows that each appellant should have the opportunity, within thirty days of the furnishing of such additional information, to submit a statement, affidavits, or both, to show why she should be retained and not removed from her employment. For these purposes appellants are entitled to mandatory injunctions. They also pray that the Secretary be required to certify all evidence in the files of the Department of the Army concerning the charges and "action taken regarding the same" to the District Court for review, and that they be granted a hearing before the Army Security Review Board. But the statute on which appellants rely gives them no such right. The most it authorizes the court to require is that the Secretary furnish the additional information so that appellants will be fully informed; receive and consider from each appellant such statement and affidavits as either may submit, and thereupon, on the basis of all the facts and circumstances before him, determine in each case whether the appellant should be "retained" and not removed from her position.

In each case the judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

PRETTYMAN, Circuit Judge (dissenting).

I disagree emphatically with my brethren in this matter.

1. Bailey v. Richardson [1] concerned an employee in a "non-sensitive" agency of the Government. This court held after exhaustive studies that she had no right, constitutional, statutory or otherwise, to be informed of the names, addresses or descriptions of informants against her or of other evidence upon which executive officials concluded that there were reasonable grounds to suspect her of disloyalty. It so held even though, obviously enough, without that information she could not adequately defend herself against the suspicions. The court now holds in the case at bar that an employee in a "sensitive" agency, i. e., the War Department itself, has an enforceable right to whatever information is necessary to enable her to "defend" herself. The sum of the two opinions is that an employee in the War Department, a "sensitive" agency, has a right to information concerning sus-

---

1. 1950, 86 U.S.App.D.C. 248, 182 F.2d 46, certiorari granted, 1950, 339 U.S. 977, 70 S.Ct. 1025.

picion of her disloyalty but that an employee in a "non-sensitive" agency does not. I cannot ascribe to the Congress and the President any such intent, and I cannot join in placing this court in such an inexplicable position. If Bailey was correctly decided, *a fortiori* these judgments should be affirmed.

2. The court does not say specifically that an employee must be given the names of informants. It speaks of an opportunity "to defend". An effective defense against a false charge certainly includes an attack upon the credibility of the informant. It is elementary in our concepts that a complete defense is not possible without identification of the informants. That is the reason for the confrontation-with-witnesses rule in the Sixth Amendment. The whole question in these cases involving Government employees and the loyalty program is whether an employee has a right to adequate defense in the judicial sense. I wholeheartedly agree that it disturbs us to say that he does not; it raises American hackles to have the suggestion made. But the fact of the matter is that a Government employee has never in our history had any right to his job except such rights as Congress or the Executive gave him, and the further fact is that the security of the country is involved in the methods of detection by which responsible officials protect the internal operations of the Government. It should not be forgotten or overlooked that the executive branch of the Government in not required, either by law or by morals, to retain an employee until he commits an overt act of sabotage; reasonably grounded suspicion of disloyalty is enough; executive officials have power to be cautious in respect to personnel.

While the court speaks in general terms of the right to adequate defense, it specifies as the information which must be given only "times, places and organizations". Thus it actually stops far short of specifying the material necessary for an adequate defense. It attempts to take a middle ground, specifying some but not requiring all of the information essential to a defense. The basis upon which the court assumes to select the information to be supplied is that "we see no reason to suppose, or to think that the Secretary supposed, that the information we specify for the instant cases would involve any risk to such [*i. e.*, national security] interests." Thus the court assumes to decide what does and what does not involve security risk. The court has no such power. The statute clearly, succinctly and emphatically confers that power upon the Secretary. The court assumes to say that times, places and organizations would not involve security risk in these cases; what information will it specify in the next case? If it has power to specify, each discharged employee has the right, I suppose, to ask the court to specify in his case. In short, it seems clear to me that the position which the court takes is untenable. The Secretary has power to take a middle ground, giving some information and withholding other information, according to his judgment as to the security risk involved. But a court has no such power.

3. The statute says that the employee shall be fully informed of the reasons for his dismissal. "Reasons" is the term. When one speaks of "reasons" for a discharge, what does he mean? Suppose one employee reports another for tardiness and after inquiry the delinquent is discharged. The name of the informing employee would be no part of the "reason" for the discharge. Tardiness would be the reason, fully and completely. If a formal charge were made and formal proof undertaken, the name of an informant would be required to be revealed. And there, it seems to me, confusion has crept into this consideration. The requirement that the name be given is not because that name would be part of the reason for the discharge, but is because formal charges and proof of offense connote opportunity for adequate defense and such opportunity involves names of informants. The statute speaks of "reasons" only. The "reason" for a discharge is the conduct of the employee, not the information given against him.

At the very most, the word "reasons" is not of such fixed and certain meaning as to override its context and every indication of the purpose of the statute. The dictionaries give the word several meanings, the

first being "a statement in explanation" and the second being "a ground or cause". There can be no dispute as to the intent and purpose of Congress or as to context in the present instance. The statute was meant to permit the Secretaries to rid their Departments of doubtful employees without revealing the methods by which such matters are discovered. It seems to me that "reasons" must be given the permissible meaning which is consistent with the congressional purpose.

The scheme of this statute seems clear to me. The Secretary may summarily remove any employee whose removal is in his opinion "warranted" by the national security. So the employee is out, without the necessity of cause or explanation. The Secretary's opinion is enough up to that point. Thereafter, but wholly within the discretion of the Secretary, the employee may be reinstated. In connection with this latter possibility, the employee has an opportunity to appear and be fully informed of the reasons for his removal and to submit such statements as he may desire "to show why he should be retained and not removed". These latter provisions do not purport to give the employee opportunity for a complete defense. They do not contradict the earlier provisions; they leave untouched the summary power of the Secretary. They purport to give the employee an opportunity to "speak his piece" after he knows the reasons for his dismissal. This may be harsh practice to our current thought, but it is clear enough that Congress thought it was dealing with the requirements of national security in the War and Navy Departments, and it is also clear enough, as we pointed out in the Bailey case, supra, that Congress and the President can do pretty much as they think best in respect to the qualifications and tenure of executive governmental employees. In short, this statute is not one providing for charges, hearing, defense and determination upon the merits; it is one providing summary power and an ancillary opportunity to make whatever plea or statement the employee may care to make.

4. In the next place, these appellants were actually given all the information which the court now specifies as being required.

In her letter of removal Miss Deak was told that the reasons were that she attended a meeting open to Communists only and meetings sponsored by the Communist Party and had evinced active and sympathetic affiliation with organizations known to be affiliated with the Communist Party. So at that point she knew that she was not being removed for drunkenness, tardiness, inefficiency, reduction in force, treason, sedition, espionage, encouragement of sedition, membership in the Communist Party, Nazi Party or Fascist Party, serving the interests of a foreign government, knowingly divulging classified information, or any of the other such reasons listed in War Department Circular 100. She was removed because she had attended Communist Party meetings. That was the reason she was removed. If she had received no further information, she would have known fully the reason why she was removed; but she was given much more information.

Let us note exactly what the statute provides in respect to procedure. It says: "*Provided,* That within thirty days after such removal any such person shall have an opportunity personally to appear before the official designated by the Secretary concerned and be fully informed of the reasons for such removal, and to submit, within thirty days thereafter, such statement or affidavits, or both, as he may desire to show why he should be retained and not removed."

That provision seems clearly enough to mean that the reasons are to be given when the employee appears in person. That is what was done in the cases at bar, and I cannot see how that procedure violated the statute. When Miss Deak appeared before the officials designated by the Secretary of War, she was told that the Board would give full consideration to the fact that it was not possible to acquaint her with confidential information or the sources of such information, but that the Department and the Board sincerely desired that loyal employees be afforded full protection against unfounded accusations. Her counsel, who was from her Congressman's office, was

present and participated. Then she was asked specific questions, giving names, dates and places. Space does not permit complete reproduction of the transcript, but a full reading of it is impressive and the matter is of such importance that I quote a few of the questions, substituting letters for the names of individuals.

"Q. Did you ever attend a meeting of any kind at the Kiel Auditorium?"

"Q. Do you know [A]; who he is?"

"Q. Did you see him at the Kiel Auditorium?"

"Q. It was late in 1947?"

"Q. Do you know where the Pleasant Green Baptist Church is on Page Boulevard in the 4500 Block?"

"Q. Have you ever been to a meeting at the Pleasant Green Baptist Church?"

"Q. Do you know where the Castle Ballroom is in St. Louis?"

"Q. It is at 2839 Olive Street, St. Louis. Do you know where the 2800 Block is on Olive, approximately?"

"Q. Tell us a little more about Mr. [B]. When did you first know him and what was the extent of your acquaintance with him? Have you known him ever since you have been working there?"

"Q. You testified you had lunch with him one time at the Center?"

"Chairman: Did you ever correspond with him; receive any mail or send any?"

"Q. Do you know or know of a person named [C]?"

"Q. Did you ever hear such a person speak to your knowledge—[C]? Did you ever hear a [C] make a speech?"

"Q. Do you know anyone by the name of [D]?"

"Q. Or [E]? A woman by that name?"

"Q. Did you ever hear any of these people talk or make a speech of any kind at any kind of a gathering, small or large?"

"Q. Have you ever been asked to join the Communist Party?"

"Q. Miss Deak, how do you account for a report that you were seen at a meeting at the Kiel Auditorium on the 1st of May 1947?"

"Q. Would you say then such a report is false?"

"Q. Would you say that if a report was made that you were seen at the Pleasant Green Baptist Church mentioned earlier, on the 9th of May 1947, then such a report is false?"

"Q. Can you think of any reason for anyone making such a report?"

"Q. In talking with [F] in January 1948 about the meeting she mentioned at the Kiel Auditorium, did she tell you what kind of meeting it was?"

"Q. Do you know [G]?"

"Q. [H]?"

"Q. But you have never known of [I]?"

"Q. Were you ever at any meeting that [G] was at?"

"Q. Or public gatherings outside of the office?"

"Q. [H]?"

"Member: Yes; I have one more question. Miss Deak, we have a report of the Investigating Agency of the United States Government which shows that on 9 November 1947 you were seen attending a meeting at the Kiel Auditorium, St. Louis, and during the course of the meeting you acted as an usher and later on assisted in the collection of donations. Can you explain that?"

There are fifty (50) pages of such questions in the transcript of the hearing. At the end of the questioning the Chairman asked counsel and Miss Deak whether they had anything further to submit, and the reply was that they did not. The language of the Chairman was "We want to afford counsel now an opportunity to present anything he may choose." As a matter of fact, counsel indicated that Miss Deak was anxious for an early decision. There was no request for an opportunity to present further data.

In Miss Patton's case the questions were of a precisely similar nature and cover forty-seven (47) pages of the transcript. The same inquiry as to further material was made by the Chairman and the same response made. There was no request for opportunity to present further data.

The questions exemplified by the above quotations certainly specified times, places and organizations, which is all the court now requires; they even included names. I confess that I am confused by this part of the court's opinion. The court says that the Secretary must furnish "the additional information". I suppose that this means information in addition to that furnished. There is nothing in the record to show that there is any such further information, and the court says that it has no authority to require "production of the evidence". So I am at a loss to understand what the mandatory injunction now authorized should direct the Secretary to do.

The court says that "In no instance was a question specifically connected with the information stated in the reasons for removal." I do not see how the court can assume that these were idle questions, or that the Board had no information reflecting them, or that the Board was venal enough to try knowingly to dupe these employees. It seems clear enough to me that the questions could not have been groundless vaporizings. My view is that those questions were honestly asked and reflected, so far as the limits of national security, in the opinion of the Secretary, permitted, the information against the employees.

5. If the court had held merely that the Secretary must, by mandate of the statute, hold in abeyance for thirty days his decision upon an application for reinstatement, so as to give an employee, willy-nilly, that opportunity to think over the information given him orally and to file responsive material in writing, I would have no great quarrel with the decision. While technically these people, having said that they had nothing further to offer, might be held to have waived their thirty-day privilege, there is a sound basis for saying that thirty days of calm reflection by the employee upon the orally-given information might uncover pertinent response which did not come instantly to mind in the excitement of the meeting room. Therefore the court might hold that, although an employee said at the conclusion of an oral questioning that he had nothing further to submit, the statute requires that he be permitted to think the situation over for thirty days in the light of the questions asked him. My disagreement is with the following features of the court's opinion: (1) the requirement that the Secretary furnish "additional information"; (2) the assumption that the court has power to say what does and what does not involve security risks in respect to executive Government employment; (3) the holding that the statutory term "reasons" includes any more data than the Secretary, upon his judgment as to the national security, may decide to furnish; (4) the holding that the statute requires the Secretary to give the employee whatever information is necessary in order to prepare an adequate defense; and (5) the conclusion that these employees were not furnished all the information which the statute requires.

I agree with the trial judge.