**MONEY**

v.

**ANDERSON, Secretary, Department of the Navy.**

No. 11698.

United States Court of Appeals District of Columbia Circuit.

Argued June 5, 1953.

Decided Nov. 5, 1953.

Mr. Keith L. Seegmiller, Washington, D. C., for appellant.

Mr. E. Riley Casey, Asst. U. S. Atty., Washington, D. C., for appellee. Messrs. Charles M. Irelan, U. S. Atty., and William R. Glendon and Robert M. Scott, Asst. U. S. Attys., at the time brief was filed, Washington, D. C., were also on the brief for appellee. Mr. Leo A. Rover, U. S. Atty. at time of argument, Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant sued to have his removal from the classified Civil Service declared illegal and requested reinstatement therein. The case was decided against him in the District Court on cross-motions for summary judgment. Two issues were raised. The first was whether appellant's removal was effected in accordance with the procedure authorized by statute [1] and defined by Civil Service Commission regulation.[2] This issue involved appellant's contention that the written notice of charges preferred against him for removal failed to comply with the regulatory direction that such "[c]harges must be specific." Because the District Court found the charges sufficiently specific, it did not decide the

[1]. 37 Stat. 555 (1912), 5 U.S.C.A. § 652 (1946) provides in pertinent part: "No person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same."

[2]. 5 Code Fed.Regs. § 12.103 (1938) provides: "Charges must be specific. A mere statement that removal is proposed for the good of the public service or for incompetence, or for lack of fitness and qualifications, shall not be considered as meeting the requirements of § 12.1, [identical with portion of 5 U.S.C. § 652 quoted in note 1, supra] since it is not sufficient to enable the employee to make reply as contemplated by § 12.1." This regulation, in effect at the time of appellant's discharge, has since been replaced by 5 Code Fed.Regs. § 9.102 (Cum.Supp.1952), a regulation similar in purpose, which also requires written notice "specifically and in detail, [of] the charges preferred against him."

second issue—namely, whether the suit was barred by laches.

This is what the pleadings and affidavits disclosed. On January 25, 1944, after almost twelve continuous years as a permanent Civil Service employee (with an Efficiency Rating of "Excellent") in the United States Navy Shipyards at Philadelphia, appellant was orally advised of his suspension by the Commandant for "improper relations with women." One week later, written charges were personally delivered by the Commandant with the advice that no further information would be given. These charges read:

"1. Charges of immoral or notoriously disgraceful conduct are hereby preferred against you, the nature of which is as follows:

"(a) That during the month of March 1943, at a birthday party given in your honor in Shop 23 by the women employees of your shop, you did kiss these women employees present and made further advances to at least two of them, which actions on your part were resented by these employees.

"(b) That in or near National Park, N. J., over a period of years, you have had abnormal sexual relations with, and have made advances to, girls in their teens; that these occurrences continued as recently as eight or nine months ago.

"2. Due to the charge as indicated above, you are hereby suspended from duty without pay pending action in your case. You are hereby given 3 days from the date hereof to make any reply in writing which you consider appropriate to the charges, and to show cause why you should not be discharged." [3]

Appellant's written answer of denial is set out in the margin below.[4] He says of

_____

3. Transcript of Record, p. 12.

4. "1. On Feb. 1st 1944 I was called before the Commandant and shown charges against me as set forth in letter dated 31 Jan. 1944. I was told that I would be permitted to resign if I chose to do so. I declined to so resign, and was given until 4 Feb. to make written reply to said charges. I beg to submit and file the following answer.

"2. Charge (a). It is submitted that a surprise birthday party was given in my honor in the shop store-room during a luncheon period in March 1943 by women employees of my shop. On this occasion a birthday cake was presented to me and I was escorted to the center of the room and to the end of a table under a sign which I afterwards noticed had the words 'Lots of Luck and Kisses'. The women then crowded around me and showered me with kisses. I was much embarrassed by the situation, but tried to accept it in good faith. Similar incidents have often taken place throughout the Navy Yard at Christmas. I absolutely deny that any improper advances were made by me to any woman participating, nor was any resentment showed by anyone. The entire affair appeared to be a happy occasion among all present. I had no knowledge whatsoever of the planning of this affair until I entered the room where it was held. I accepted the spirit of the occasion as a mark of goodwill on the part of women employees intended to demonstrate a cooperative attitude in their work.

"If the Commandant should consider my acceptance of these attentions at that time as a breach of discipline, then and in that event I desire to express my deep regret for an error in judgment on my part.

"3. Charge (b). The charge in this paragraph concerns matters outside of my duties at the Navy Yard and in no way concerning my work.

"I totally deny the allegations concerning any alleged improper acts or relations at any time or with any person whatsoever at or near National Park, N. J., or at any other place.

"I have heard with great concern that two persons declaring themselves officials of the United States Government have been seeking affidavits at or near National Park in order that charges might be filed against me at the Navy Yard. It is reported to me that they have obtained affidavits from minors, without the previous knowledge of the families of those minors, and without the said minors having a proper knowledge of the seriousness and of the legal implications of their affidavits.

"Attached hereto and made a part of this reply is the affidavit of Mrs. Ruth

this answer in an affidavit filed in support of his motion for summary judgment below:

" * * * I made answer in writing submitting proof thought possibly to be pertinent, but without knowing whether it in fact even dealt with the same subject matter as that underlying the charges against me. * * * During the ensuing weeks I submitted numerous affidavits to the Commandant in support of my general character and integrity, but for lack of detailed knowledge of the charges against me I was not able to make specific refutation. * * * " 5

" * * * Through long and diligent investigation, aided by detective agencies employed by me, I ultimately found, after I had been discharged from service at the Navy Yard, the names of four persons who had signed and submitted to the Commandant false charges against me of immoral conduct, which were responsible, in part at least, for my discharge. * * * " 6

"To the date hereof I have never learned definitely whether others also filed charges against me that contributed to the action of the Navy Department in removing me from service, and I have no knowledge, except as recited herein, of the details of the charges contained in the letter of January 31, 1944 * * * ." 7

■■■ We hold the charges lack the specificity required by the applicable removal procedure. Charges preferred for removal must be specific enough to provide a fair opportunity for refutation by

Williams, a minor, relating to circumstances under which an Affidavit supposedly used against me was obtained. The second affidavit of Harold Williams, her husband, is in corroboration of certain facts in connection therewith.

"These affidavits show that the affidavit obtained and supposedly used against me and upon which or partly upon which a charge in this matter was based, was obtained by fraud and duress, from a minor, without the proper protection of her legal rights and without her knowledge of what she was doing. It is believed that other affidavit or affidavits were obtained under similar circumstances.

"In view of the serious nature of this charge these affidavits should be disregarded and not considered in connection with any charges made against me as an employee of the Philadelphia Navy Yard.

"4. I hereby request copies of affidavits upon which charges are made against me, as provided by the Act of Aug. 24, 1912.

"5. Owing to my efforts as Master Mechanic Forge Shop to secure full measure of work from employees to meet heavy war schedules, I have by some people been regarded as a too-strict disciplinarian. Certain employees of my department have on that account become my enemies. Such animosity against me as has been thus engendered has resulted in the filing of the above charges to justify the shortcomings of those persons. If these actions of such persons and others with alleged grievances be thus encouraged by superior officers, then the functioning of disciplinary action in the Navy Yard will be adversely affected in serious degree.

"6. My ability as a mechanic and as an executive has, within my knowledge, always been pronounced excellent. I maintain that my character throughout my lifetime has also been excellent:—and that my reputation among all sound citizens has throughout my lifetime been excellent, likewise." Transcript of Record, pp. 13–14.

5. Transcript of Record, p. 26.

6. Transcript of Record, p. 27. The affidavit continues: "I brought suit against the three first named of these people for conspiracy, slander and libel, based on the statements they had made against me to the Commandant, and received judgment against them in the total amount of $5,300, plus costs, which included $5,000 as punitive damages. It was shown at the trial that said statements which they had made against me were the cause, at least in part, of my discharge from service at the Navy Yard. Said suit is officially identified as Fred B. Money v. Paul A. Etter, Martin R. Dolan and Helen M. Dolan, in the Superior Court of New Jersey, Law Division, Gloucester County (Docket No. 2–531–49—141715) [8 N.J.Super. 371, 72 A.2d 409]. * * * ". Ibid.

7. Transcript of Record, p. 27.

the innocent who have no knowledge of the conduct charged, as well as the guilty who do possess such knowledge. To meet that requirement in the present case, the first charge—that of improper advances to women employees at the party—must include the names of the women involved. To refute the charge without this information, appellant, if innocent, would be required to (1) remember or learn the names of all the women employees present at the party, (2) locate and obtain an interview with each one, and (3) overcome the natural reluctance of those who had complained to admit that it was their complaints which culminated in the charges brought ten months after the alleged incident, all preliminary to (4) undertaking to collect evidence tending to show the falsity of their charges. Such a burden hardly comports with minimal notions of fair opportunity for refutation.

■ The even more damaging second charge—that of "abnormal sexual relations with and * * * advances to, girls in their teens" over a period of years—provides even less opportunity for refutation than the first. Under our view of the specificity required, this second charge must include the names of the girls and the places and approximate dates of the alleged molestations. In the light of what we have already said regarding the first charge, it is plain that without such information no fair opportunity for refutation is possible except, perhaps, for one guilty of the charge.

No reason appears and none is offered for withholding more specific charges here. Considerations of national security, said to require protection for confidential informants under Executive Order No. 9835, 5 U.S.C.A. § 631 note, in Bailey v. Richardson [8] are not present. Because no claim of risk to security interests was asserted in Deak v. Pace,[9] we held the employee must be informed "with reasonable certainty and precision of the cause for his removal," [10] notwithstanding a statute permitting the Secretary of the Army to immediately remove an employee if such action were warranted by the demands of national security.[11]

As we indicated earlier, the trial court did not reach consideration of the issue of whether this suit is barred by laches. The writer of this opinion is of the view that this court should decide the issue since (1) it was submitted to the court below for decision upon the record now before us; (2) it does not involve the credibility of testimony; and (3) it was fully briefed and argued in this court. The other two members of this court, however, are of the view that the District Court should pass upon the issue in the first instance since it involves the exercise of discretion,[12] in weighing the equities on either side to determine what, if any, relief can properly be granted under the circumstances of the case. Accordingly, the judgment on appeal will be reversed and the case remanded for the District Court's determination of the laches issue.[13]

Reversed and remanded for further proceedings in accordance with this opinion.

8. 1950, 86 U.S.App.D.C. 248, 182 F.2d 46, affirmed, 1951, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352.

9. 1950, 88 U.S.App.D.C. 50, 185 F.2d 997.

10. 88 U.S.App.D.C. at page 52, 185 F.2d at page 999.

11. Deak v. Pace expressly did not decide "the course that should be followed if 'security interests' were thought to conflict with an employee's right to precise information * * *." Ibid.

12. The majority cites Brown v. County of Buena Vista, 1877, 95 U.S. 157, 160, 24 L.Ed. 422; Laursen v. O'Brien, 7 Cir., 1937, 90 F.2d 792, 795.

13. In the event the District Court determines that laches is inapplicable, our decision in Borak v. Biddle, 78 U.S.App. D.C. 374, 141 F.2d 278, certiorari denied 1944, 323 U.S. 738, 65 S.Ct. 42, 89 L. Ed. 591, will control the nature and scope of allowable relief.