Davis, Judge,
dissenting:
Non-veteran employees of the Federal Government had, until recently, few procedural protections against discharge. But one of their rights the courts have consistently enforced has been the bar against removal unless found guilty of a proper charge duly laid against them.[1] Under the Lloyd-La Follette Act, 5 U.S.C. § 652, as implemented by the Civil Service Commission’s regulations and by judicial rulings, the charge must be so specific, detailed, and precise that it gives fair notice of a valid ground for discharge; and the employing agency’s decision must be based directly on one or more such proper charges. This plaintiff’s own agency interpreted these requirements (in its regulations) as demanding a letter of charges which would be “sufficient to enable the employee to understand fully the charges and to join issue adequately with the proposed action.” She was entitled to at least that minimal protection.
I do not agree that plaintiff has been afforded this right. In the circumstances of her case, the bare charge that she “refused” to obey the orders of her superiors was an inadequate and ambiguous accusation of improper conduct. A refusal to obey is not per se an offense; sanctions can be imposed only if the refusal is without justification. If an employee refuses to obey an order because the order is illegal or he is ill or there is an acute emergency at home or a higher-echelon official has countermanded the order, the subordinate cannot ordinarily be punished for his refusal; in that situation the act of refusal does not merit any sanction. The charge should therefore take account of such a potential justification or affirmative defense, by some qualification like “without good cause” or “without adequate justification.” In that way the employee will be given notice that the justifi *223 cation he may already have presented informally is tentatively deemed insufficient, and the deciding official will know that he has squarely to pass upon the adequacy of the proffered defense for full exculpation or for mitigation.
It may be suggested that the defect I find in the charge— the omission of a few words — is merely “technical” and should be ignored as a formalism of the type dear to Baron Parke. “Lawyers know, if others do not, that what may seem technical may embody a great tradition of justice * * Kotteakos v. United States, 328 U.S. 150, 761 (1946). This is just such a “technicality.” It is an ingrained postulate of Anglo-American law, civil and criminal, that a charging document — be it an indictment, information, complaint, petition, or declaration — must be so self-contained that once its assertions are taken at their face value the right to relief or the liability to sanction will emerge, without supplementation or further pleading. The historical office of the demurrer or the motion to dismiss has been to apply just this test to charging documents. In part, no doubt, the principle that the initiating paper must embody all the essentials stems from the nature of the common-law record. The principle has survived, however, because it serves valid ends in our awn day. One purpose is to permit the ending of the litigation before trial if no proper claim or charge is set forth. That goal is of lesser significance for employee-removal cases in which the equivalent of the demurrer has not been used. But other aims do have meaning for cases like plaintiff’s It is important that the employee, often without counsel and generally with few other protections, know exactly what it is that the agency considers so harmful or detrimental that he should be discharged. It is also important that the employee realize that his justification or defense will be weighed, not disregarded. It is important that the officials who make the intermediate and final decisions put their minds to the precise issue — not merely to the general question of whether the employee is good or bad, worth retaining or not. See Mulligan v. Andrews, supra. The absence of full judicial review emphasizes the need for careful and considered decision at the administrative stages. As the District of Co *224 lumbia Circuit said, in Mulligan, about a comparable procedural protection (211 F.2d at 31) : “* * * it is required as a procedural safeguard against just the sort of errors which, if committed at the administrative level, are beyond reach of our review.”
The administrative history of plaintiff’s case illustrates, for me, the soundness of the principle that the charge should embody all the elements of the specific offense levied against the employee. The offense here was said to be “refusal” to appear at disciplinary conferences and to make a disciplinary report on March 23rd and 24th. Miss Erenreich’s attorney had previously told her that she should not appear at such conferences or make such reports without his presence and assistance; despite this warning, she did participate in such a meeting on March 18th; at that time she apparently felt unable to present her viewpoint adequately; the next day, the attorney (not present counsel) “severely reprimanded” her for attending the meeting without him and repeated his instructions. When she was ordered on March 23rd and March 24th to make the reports on her whereabouts from 3:15 p.m. to 4:20 p.m. on March 22nd, she unfortunately followed her attorney’s directive and told her superiors that she could not appear without her lawyer. Nevertheless, the formal charges served on her, a few days later, asserted no more than that she had “refused” the orders; there was no recognition that she had proffered an excuse or that the validity of the excuse (if believed) was challenged. Plaintiff’s written reply repeated, again and again, that she had acted under her attorney’s advice and therefore that she had not “refused” to comply. At the oral hearing, unrepresented by counsel,[2] she rested, once more, almost entirely on her attorney’s advice and did not seek to support that advice or her acceptance of it. The representatives of management at the hearing agreed that she acted in good faith and that she believed she had good reason for not reporting. Though the hearing board concluded generally that all the charges had been substantiated, the specific comments in its findings give me great pause. The board found that “Miss Erenreich *225 relied on advice of her attorney to not report to Mr. Myleoraine’s office. In her mind, this was not refusal. In the opinion of the Board, she exercised poor judgment.” Again, the board characterized her acceptance of the attorney’s advice as a “conscious judgment” which “was ill-advised.” (Emphasis added.) [3] The formal letter of removal from the Director of Personnel, which followed the hearing, simply said that each of the charges was fully supported by the evidence and warranted her discharge.
To my mind, this administrative record fails to show either (a) that plaintiff was properly apprised that the offense with which she was charged was not merely her bare “refusal” to obey but rather a refusal without good cause (i.e., that the validity of her excuse was in issue), or (b) that the deciding officials understood that they had to appraise the validity of her excuse in determining whether she had “refused” and what the penalty should be. Throughout, Miss Erenreich seems to have thought that, once she prevailed upon her superiors to believe that she was relying in good faith on her lawyer’s advice, she could not possibly be convicted of “refusal”; she considered her excuse so valid, if believed, that she never attempted to support its adequacy or legality. If the letter of charges had properly opened up the question of the validity of her justification (even if believed), she could have argued that point (or obtained a lawyer for the hearing to argue it for her).[4] As things turned out, that issue was never really mooted. Plaintiff assumed her position without argument, concentrating on proof that she acted in good faith and without insubordinate intent. The management representatives simply 'assumed that the defense was totally without any justification and that good faith reliance was no excuse at all. The hearing board accepted plaintiff’s good faith but failed to weigh the validity of the excuse as a component of “refusal” or as a mitigating factor. From its comments, quoted above, one *226 gathers that the board thought she was guilty, not of “refusal”, but of “poor judgment” or “ill-advised judgment”— a charge not made and against which she was not called upon to defend. Against this background, the colorless discharge letter from the Director of Personnel can have small significance in showing that the ultimate judge understood the precise issues to which he had to put his mind; we do not even know whether he considered plaintiff’s excuse as bearing on the punishment to be imposed.[5] In sum, I view this record as showing, once again, that normally there is no substitute for a proper charge — detailed, specific, unambiguous, and complete. Where the charge is faulty, as here, the ensuing proceedings are likely to go awry, as here — to the employee’s detriment and the injury of the whole federal service.
It goes almost without saying that we should take no account of the facts, if they be facts, that plaintiff may be inefficient or difficult or tardy or an employment “problem.” Nor can we be concerned with her amenability to other charges not brought against her. Her rights in court are measured solely by the charges actually made and the proceedings under those charges. Looking only to those charges and proceedings, I would grant the plaintiff’s motion for summary judgment.

 Dealt v. Pace, 185 E. 2d 997 (C.A.D.C., 1960) ; Money v. Anderson, 208 F. 2d 34 (C.A.D.C., 1958) ; Mulligan v. Andrews, 211 E. 2d 28 (C.A.D.C., 1954) ; McGuire v. United States, 145 Ct. Cl. 17 (1959).

 Apparently, plaintiff’s former attorney withdrew before the hearing.

 The Director’s decision does refer to “the information contained in” present counsel’s letter of June 9, I960-, on plaintiff’s hehalf. That short letter contained some discussion of plaintiff’s excuse, but, especially in the light of the hearing board’s comments, I do not regard it as adequate proof that the Director’s mind was directed to the right issues.

 These comments of the board were not made known to plaintiff (or her new attorney) until after the decision to remove her.

 The lawyer’s advice, though incorrect, was not frivolous; a layman should not be held to have known it was wrong, particularly since it came from an attorney experienced in personnel matters. Even one of the agency’s officials was unsure of the point when plaintiff raised it.