Paul W. **BURKETT**

v.

**UNITED STATES.**

No. 288–66.

United States Court of Claims.

Nov. 15, 1968.

---

Byron Scott, Washington, D. C., for plaintiff; Van A. Stilley, Washington, D. C., attorney of record.

Edward M. Jerum, Dept. of Justice, with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant. Charles B. Lennahan, Arlington, Va., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

DAVIS, Judge.

For some years prior to the middle of 1964, plaintiff Paul W. Burkett, a veteran, was employed by various units of the Department of Defense; at that time he was a Supervisory Industrial Engineer (GS 14) in the Headquarters of the Army Weapons Command at the Rock Island Arsenal. He was removed on September 1, 1964, for making malicious statements against his immediate superior (R. L. Milne) with the intent to harm or destroy the latter's reputation, authority, or official standing. The Civil Service Commission upheld the separation, and plaintiff has sought review here. Both parties have moved for summary judgment on the administrative record, though plaintiff asserts that in no event can he be nonsuited without a trial of certain factual issues. In the view we take, the existing administrative record is adequate to dispose of the case; we need not consider whether, on other assumptions, a court trial would be proper or necessary.

Of the several incidents referred to in the notice of charges—the letter of proposed removal—only two survived the Civil Service Commission's scrutiny. Both involved the plaintiff's reporting of alleged security violations by Mr. Milne. According to the Commission's findings, a subordinate of Mr. Burkett, while working with materials including classified papers, left a classified document unguarded; Mr. Milne, happening upon the exposed paper, took it and placed it in his safe in order to impress the careless employee with the need for more stringent security controls; when the employee returned to his working area, he and Mr. Burkett searched for the document for some time, after which Mr. Milne returned it with a lecture on the need to safeguard security information;

the plaintiff then went to the office of the Director (Mr. Milne's superior) to report what Milne had done and to inquire whether his action constituted a security violation.

The second episode, as found by the Commission, was this: A day or so after the previous incident, the plaintiff walked into Mr. Milne's empty office, saw a paper marked "For Official Use Only" lying on a desk or table, picked it up, reported to the "front office" what he had found, and apparently characterized it as a security violation.

As to both of these instances, the Commission found that, upon being reprimanded by Mr. Milne for having made the complaints directly to the Director's office without first advising Milne, plaintiff admitted that he had done this to embarrass his superior. On this basis, the Commission's regional office determined that the charge of making-malicious-statements-with-intent-to-harm had been proved. The Board of Appeals and Review affirmed on the same ground, and the Commissioners, after consideration, refused a discretionary review.

There are at least two mortal defects on the face of this record. The first is the unsatisfactory character of the notice of charges—the letter of proposed removal. The other is the improper factual basis upon which the Commission determined that plaintiff had acted with intent to harm Mr. Milne.

■■■■ A. *Inadequacy of the notice of charges.* Section 14 of the Veterans' Preference Act, 5 U.S.C. § 863 (1964) (currently 5 U.S.C. § 7512(b) (Supp. III 1965–67)), orders that, for a veteran, the notice must state "any and all reasons, specifically and in detail, for the proposed action." This requirement, the court has explained, is meant "to afford the employee a *fair opportunity* to oppose

his removal, and the charges must be considered with the view of determining whether plaintiff was informed of the basis of the proposed action with *sufficient particularity* to apprise him of allegations he must refute or acts he must justify. The technical rules of criminal proceedings are not applicable here, *and the facts and circumstances of a particular case are regarded as important in such an inquiry*" (emphasis added). Engelhardt v. United States, 125 Ct.Cl. 603, 606 (1953); Sells v. United States, 146 Ct.Cl. 1, 5 (1959). See also, Money v. Anderson, 93 U.S.App.D.C. 130, 208 F.2d 34 (C.A.D.C.1953); Deak v. Pace, 88 U.S.App.D.C. 50, 185 F.2d 997 (C.A.D.C.1950). In the same vein, the Army personnel regulations, applicable here, require the "stated reasons * * * to be supported by evidence such as dates, incidents, witnesses, or references to actions, so that the employee will be able to understand *with certainty exactly* why the action is proposed and *exactly* what offenses, delinquency in conduct or performance, or reasons, are being ruled upon" (emphasis added).[1] Close adherence to these criteria is essential to a fair proceeding because the notice of charges ordinarily fulfills the functions of the bill of particulars and the discovery process in court litigation (as well as that of the complaint or petition).

■■■■ The notice handed to plaintiff misses these governing standards in five significant respects: (1) lack of specificity as to the "statements" plaintiff made; (2) lack of specificity as to the persons to whom he made them; (3) indefiniteness as to the element of malice; (4) undue generality as to the harm he intended to inflict; and (5) inclusion of material and incidents unrelated to what appeared to be the only stated charge.

1. Army Civilian Personnel Regulations, CPR S1, "Separations and Adverse Personnel Actions", Feb. 1961, Section 2–2.d. The quoted paragraph of the regulations goes on to say, "Appointing officers cannot rely upon a notice of decision, grievance hearing, conversation, or subsequent correspondence with the employee as a means of amplifying the charges. Neither can the appointing officer state general reasons upon the presumption, even though warranted, that the employee will readily understand the basis for the proposed action."

The single complaint set forth at the outset of the letter was the grave one of making malicious statements against his superior with intent to harm or destroy the latter's reputation, authority, or official standing. This is close kin to an accusation of defamation, which must normally have an adequate and fairly precise narration of what the hurtful statement was, and to whom made.[2] Yet as to both incidents the notice was much too general in indicating what plaintiff said, what words he used, exactly what thoughts his words conveyed, and to whom he spoke. When it comes to the contents of plaintiff's allegedly malicious statements, the notice simply contents itself with the ambiguous conclusion that he had reported "what you [Mr. Burkett] considered to be a security violation" and "what you called a security violation against me."[3] There is not even an attempt to paraphrase or summarize what he actually said, let alone give his words *verbatim*. Equally general are the indications of the individual to whom plaintiff made his "report"; the letter merely says they were made to "the Director's office" and does not point out whether the recipient was the Director himself, his secretary, a clerk, or some higher-grade official. As for the harm plaintiff intended and his state-of-mind, aside from repeating the words of the charge the notice speaks tangentially, in the course of detailing

2. See, e. g., National Bowl-O-Mat Corp. v. Brunswick Corp., 264 F.Supp. 221, 226 (D.N.J.1967); Schaedler v. Reading Eagle Publication, Inc., 39 F.R.D. 22, 23 (E.D.Pa.1965); Mil-Hall Textile Co., Inc. v. Dun & Bradstreet, Inc., 160 F.Supp. 778, 781 (S.D.N.Y.1958); Foster v. United States, 156 F.Supp. 421, 424 (S.D. N.Y.1957); Isenman v. Bandler, 15 F.R.D. 400, 401 (E.D.N.Y.1954); Garcia v. Hilton Hotels Int'l, Inc., 97 F.Supp. 5, 11 (D.P.R.1951); Simpson v. Oil Transfer Corp., 75 F.Supp. 819, 822 (N.D.N.Y.1948); Edelman v. Locker, 6 F.R.D. 272, 274 (E.D.Pa.1946); Cooper v. Chase & Co., Inc., 2 F.R.D. 381 (S.D. Fla.1942); Sweeney v. United Feature Syndicate, Inc., 29 F.Supp. 419, 420 (S.D.N.Y.1939); cf. Foltz v. Moore McCormack Lines, Inc., 189 F.2d 537, 539 (C.A.2), cert. denied, 342 U.S. 871, 72 S.Ct. 106, 96 L.Ed. 655 (1951).

3. The pertinent part of the letter of proposed removal is as follows: "On the following day, 21 April 1964, you went straight to the Director's office to report what you considered to be a security violation that had occurred within the Division. In this case an individual was noted leaving his work area without adequately securing secret material. Immediate safeguards were put on the material by me. To impress the individual with the need for more stringent security controls, I had a document removed from the work area placed in a safe. After the individual returned and searched for the document for approximately 10 minutes, the document was returned by me with a lecture on the importance of safeguarding classified material. There was no security violation. You knew what actually had happened when you reported this case as a security violation. On 22 April 1964 you again reported to the Director's office. This time you reported what you called a security violation against me. In this particular case you manufactured an incident by walking into my office and picking up a 'For Official Use Only' document. In neither case did you contact me, before or after your report. The reports that you gave to the Director's office were checked out, and the Director was satisfied that there were no actual security violations. Your actions as presented above were a direct attempt on your part to harm my reputation and authority. There is no question about your intentions, because on 23 April 1964, during our conversation, you admitted that you not only wanted to cause me embarrassment, you wanted to have me replaced. Major L. C. Davis was in the office at the time of our conversation. While not an active participant, he overheard your statement that the reason for your actions was to cause me embarrassment. In addition to the above, in a conversation you had with Mr. W. Einfeldt of the RIA Personnel and Training office, 4 May 64, you stated that you had been seeking my dismissal along with others for security violations. Civilian Personnel Regulations CPR C2 Appendix B, Item 17, lists the following offense: 'Knowingly making a false or malicious statement against other employees, supervisors or officials with the intent to harm or destroy the reputation, authority or official standing of those concerned.' The penalty for the first offense can be a reprimand or removal."

some of the evidence as to intent, of causing Mr. Milne embarrassment, of having him replaced, and of having him dismissed. The two elements of malice and of intent-to-harm, which the notice thus lumped together, should have been treated separately, and plaintiff informed as to why the alleged statements were considered malicious and what harm he sought to inflict on his superior. With respect to malice, there is, in particular, no clear statement that plaintiff knew that the reported incidents were not security violations or that he acted in reckless disregard of the truth (see New York Times Co. v. Sullivan, 376 U.S. 254, 279–280, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964); Swaaley v. United States, 376 F.2d 857, 180 Ct.Cl. 1 (1967), and note 9 infra).[4]

We are not being unduly technical or legalistic in condemning such gross imprecision. The proofs showed that plaintiff claimed that he was merely inquiring whether Mr. Milne's actions constituted security violations, not making an outright accusation. At least as to the first incident, the Commission does not appear to find that he did more than ask questions as to whether his superior's conduct amounted to infringement of security—though these may well have been slanted questions. A man denounced for making malicious and harmful statements is entitled to know whether the so-called false "reports of security violations" were mere inquiries (perhaps tendentious ones) or were outright accusations. He likewise has a right to know to whom he is supposed to have made the statements—the Director himself, a professional employee, a secretary, or a messenger. The defense to the charge—especially as to the elements of malice and intent-to-harm—could easily vary with these (or comparable) differences in the nature and circumstances of the challenged "statements". Everything might depend on their phrasing or to whom they were made.[5] And the Army regulations (note 1, supra) make it clear that management cannot rely on generalities or "upon the presumption, even though warranted, that the employee will readily understand the basis for the proposed action."

Similarly, it would be important to the charged employee to know precisely why his words were held to be "malicious" and what injury he was supposed to want to impose. There can be a polar distance, for instance, between words spontaneously uttered in momentary pique, irritation, or pettiness, and a careful long-range plan to harass another by unfounded accusations of serious derelictions. It is also plain to anyone who has had contact with federal agencies using classified material that not all literal "security violations" are serious; many are trivial, quickly remedied, and easily forgotten; some are not even deemed worthy of note at all. It would therefore be essential for the defense of one charged with making unfounded or unjust accusations of "security violations" to be told why management thought these particular accusations to be really harmful—not mere pinpricks or petty annoyances—and in what way.

■ In addition to these telling inadequacies in the charge of making malicious statements, the notice was severely clouded by a long paragraph detailing

---

4. The notice does say that "You knew what actually had happened when you reported this case as a security violation," but it does not say that plaintiff realized that the circumstances failed to constitute such a violation, or that he acted in reckless disregard of whether or not Mr. Milne's actions amounted to a violation.

5. One part of the decision of the Board of Appeals and Review reads as if that tribunal may have thought that the charge involved careless or negligent discussion by plaintiff of "security violations" with a secretary. If this is a correct reading, it doubly illustrates the vice of an imprecise notice. First, there was no warning in the notice that discussion *with a secretary* was charged as an offense. Second, the Board failed to recognize that the only charge involved actual subjective malice and intent-to-harm, not mere negligence (no matter how gross) unless it amounted to reckless disregard of the truth.

other difficulties with plaintiff, all unrelated to that charge (except possibly as indicating some motivation for plaintiff's making the statements). The letter said that these "facts were considered in arriving at the proposed removal action." The Civil Service Commission later, after the agency had removed plaintiff, eliminated this entire paragraph from all consideration, but at the outset of the proceeding it would necessarily present a problem to the charged employee. Were these incidents additional charges to be answered; what was the bearing of this material on the "malicious statements" charge; was it intended to show plaintiff's malice; would it affect merely the sanction; or was it simply meant as derogatory "background" or "color"? [6] We think that Mr. Burkett was entitled to be free of this confusion, and that the inclusion of this paragraph so muddled the notice of charges that it failed to give him "a *fair* opportunity to oppose his removal" (emphasis added). Engelhardt v. United States, supra, 125 Ct.Cl. at 606. This is not to hold that the inclusion of superfluous or irrelevant material automatically invalidates a notice, but only that the notice is bad where such extraneous material, which should not have been included, significantly hobbles, complicates, or prejudices the employee's defense.

■ These are the reasons why we hold that the notice of charges in this case was invalid and the removal based upon such a defective notice unsupportable. There is another questionable aspect of the notice upon which we do not pass because it was not presented administratively or in this court.[7] Mr. Milne signed the notice himself as charging party, and the letter is phrased in first-person terms.[8] In a case involving the writer's personal interests so directly and strongly, this was an insensitive practice which could better have been avoided. Cf. Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Perhaps if another official had had the responsibility of deciding whether to proceed formally against plaintiff, and of framing the notice of charges, this matter would have taken a different course.

■ B. *Inadequacy of the proof of intent-to-harm.* As we have indicated, the Civil Service Commission grounded its affirmance of the removal on the finding that plaintiff intended to embarrass Mr. Milne. This was the sole motive and purpose—the only intent-to-harm—found by the regional office and the Board of Appeals and Review. The Commission did not find that plaintiff intended to have his superior replaced or dismissed (though there was some evidence to this effect), or to harm his reputation, authority or official standing in any way other than by embarrassing him. As it comes to us, this is a pure case of a subordinate (plaintiff) wanting to "get even" with his superior (Milne), for alleged slights or difficulties, by embarrassing him.

We cannot agree that on this record a purpose to embarrass, in and of itself, was sufficient proof of the element of "intent to harm or destroy [Mr. Milne's] reputation, authority or official standing." [9] For an offense so intimately

---

6. The Civil Service Commission's regional office thought that this paragraph was not considered a charge at all but "even if it were to be considered as a charge for the most part it lacks the required amount of detail and specificity". The Commission refused to consider it in any way. The agency decision explicitly stated, however, that "the facts set forth in paragraph three of the Letter 'of Proposed Removal [the paragraph in question] were considered in arriving at the decision to remove."

7. The plaintiff adequately raised the other aspects of defectiveness before the Commission, and we understand the Commission's decisions as considering them. The defendant does not argue otherwise.

8. The actual decision to remove was made by someone else.

9. In this discussion we assume, without deciding, that (i) plaintiff made his accusations with knowledge that they were false or with reckless disregard of whether they were false or not (New York Times

related to the constitutional protections of free speech and the right to petition (cf. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Swaaley v. United States, 376 F.2d 857, 180 Ct.Cl. 1 (1967); Meehan v. Macy, D.C.Cir., 392 F.2d 822 (1968), modified on reconsideration, August 23, 1968 (C.A.D.C. No. 20,812)), both the malice and the intent-to-harm should be of relatively high order. To accept a bad purpose (or intent) which is trivial or minor would have adverse chilling effects upon those first-rank interests. In Swaaley v. United States, supra, we pointed out the importance of keeping open the channels through which employees can call alleged derelictions or injustices to the attention of their superiors. In the normal run of cases those channels would also be clogged by the rule that intent to harm "reputation, authority, or official standing" is revealed simply by a purpose to "embarrass", without more. Embarrassment—discomfiture, distress, abashment—can be, and often is slight, minor, and temporary, with little or no lasting effects. It can be, and often is, a mere petty annoyance of short duration.

We have no good reason to believe that the Commission found any higher degree of embarrassment in this case. Earlier in this opinion we noted that many so-called "security violations" are exceedingly minor, and passed over without much stir. At its best, management's evidence of the "security violations" brought by Mr. Burkett against Mr. Milne seems to us to show indisputably that they were of this type—petty and of little account. The possibility of serious harm to Milne was minimal or nonexistent. Plaintiff told accurately what had in fact occurred, and his only lapse could have been in designating the two

events as possible or actual "security violations." At most, Milne was thus faced, not with a false report of the hard facts (such as that he had given a classified paper to an unauthorized outsider), but simply with an erroneous characterization of his actions. As they were reported by plaintiff, those actions, if violations at all, obviously fell into the most venial level. In fact, nothing whatever happened to Milne, and so far as this record shows nobody paid any substantial attention to plaintiff's accusations—nor should they have done so.

If the Rock Island Arsenal was a post at which rigid adherence to all security rules was enforced strictly, so that plaintiff's accusations would in fact have had a grave impact, management should have brought forward such proof. Nothing like that has been called to our attention or even implied. We are left with a record in which Mr. Milne's embarrassment was, in all probability, fleeting and without any objective hurt or consequence. There is no finding suggesting that plaintiff intended, or could have intended, anything more. That type of minimum embarrassment we hold to be an insufficient intent-to-harm.

This case must, of course, be judged on the charge brought against plaintiff and the proof of that particular charge. This court can have no concern whether some other complaint could have been levied and supported. Under the Veterans' Preference Act and the Army's regulations, the disciplinary action must stand or fall on the validity of the particular ground on which the employee was removed and of the proceedings leading to that action. See Urbina v. United States, 180 Ct.Cl. 194, 199 (1967). On both of the grounds we have discussed, without reaching or considering

v. Sullivan, supra, 376 U.S. at 279–280, 84 S.Ct. 964; Swaaley v. United States, supra, 376 F.2d 857, 180 Ct.Cl. 1; Meehan v. Macy, C.A.D.C. No. 20,812, opinion on reconsideration, August 23, 1968, slip op., p. 5) and also that (ii) the Civil Service Commission so found. This would show the element of malice. We proceed

on this assumption, for simplification, because the Board of Appeals and Review may have determined that plaintiff did not in good faith believe the incidents to be security violations or that he acted recklessly (though its opinion is unclear on this point).

other possible deficiencies, we must overturn the administrative action.[10]

The plaintiff's motion for summary judgment is granted and defendant's motion is denied. Plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c).

COLLINS, J., concurs in the result reached by the court on the grounds set forth in part A of the opinion.

10. At the oral argument, the Government receded from its defense of laches. This was inevitable since only about three months elapsed between the Commissioners' decision not to reopen or review the case and the filing of the petition in this court. The defendant had earlier conceded that the Commissioners passed upon the merits of at least some of the points in the case. See Monahan v. United States, 354 F.2d 306, 308, 173 Ct.Cl. 734, 736 (1965).