360 F.2d 770
 Anthony CAPUTO et al., Appellants,
v.
Stanley R. RESOR, Secretary of the Army, Washington, D.C.,
John Gronouski, Postmaster General, Post Office Department,
Washington, D.C., Regional Director, New York Regional Post
Office, and United States Civil Service Commission,
Washington, D.C., Appellees.
 No. 282, Docket 30242.
 United States Court of Appeals Second Circuit.
 Argued March 22, 1966.
Decided May 16, 1966.
 
 Samuel Resnicoff, New York City, for appellants.
 Robert V. Zener, Washington, D.C. (John W. Douglas, Asst. Atty. Gen., Joseph P. Hoey, U.S. Atty. for Eastern Dist. of New York, and David L. Rose, Washington, D.C., with him on the brief), for appellees.
 Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 On July 1, 1963, the Government Building in Long Island City, New York, which had been operated by the Department of the Army, was transferred to the Post Office Department. Caputo and the nineteen other plaintiffs in the present action had worked at the building for some time. None of then did mail handling work. They were essentially maintenance personnel: operating engineers, carpenters, tractor and crane operators, boiler firemen, and the like. Two were telephone operators.
 
 
 2
 On May 28, 1963, each of the plaintiffs had been sent a letter from the Civilian Personnel Office in Fort Totten, informing then of the transfer and telling them that they had a right to transfer to the Post Office Department. The letter went on to say, in essence, that the Post Office would pay employees willing to make the transfer at the salary level applicable to the job, but that the Post Office was prevented by statute from paying such employees at a rate higher than that for the lowest step within the applicable salary level. The letter notified plaintiffs that they had a right to appeal if they accepted the offer to transfer. The letter also said that it constituted advance notice of proposed adverse action to effect the separation of those employees who were unwilling to accept the transfer of activity.
 
 
 3
 The plaintiffs accepted the proposed transfer, most if not all of them saying that they did so under protest. The heart of their grievance was and is that the transfer meant that they would be paid less for doing for the Post Office Department exactly the same work they had previously done for the Army, because of the Post Office Department's refusal to enter them in the stip within each salary level which would result in their getting substantially the same income they had been paid before.[1]
 
 
 4
 Plaintiffs appealed to the Regional Director of the Civil Service Commission, who held that the reduction of compensation which resulted from the transfer was 'adverse action' against the plaintiffs, entitling them to the benefits of Section 14 of the Veterans' Preference Act, 5 U.S.C. 863, which was made applicable to all employees in the competitive civil service by Executive Order 10988, January 17, 1962. This section provides that no person covered by it shall be
 
 
 5
 '* * * reduced in rank or compensation * * * except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose * * * reduction in rank or compensation is sought shall have at least thirty days' advance written notice * * *, stating any and all reasons, specifically and in detail, for any such proposed action * * *; (such person) shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting * * *.'
 
 
 6
 The Regional Director held that the procedural requirements of Section 14 were not followed here, because the May 28th letters did not furnish the employees with the opportunity to reply, and because the employees were not furnished with final decisions containing the reasons for the action taken.
 
 
 7
 The Post Office Department appealed this decision to the Board of Appeals and Review of the Civil Service Commission, which reversed. The Board held that the transfer was a 'transfer of function' governed by regulations under Section 12 of the Veterans' Preference Act, 5 U.S.C. 861, and that these regulations, while they require preservation of tenure of appointment in an interagency transfer, do not require maintenance of the same rates of compensation. The Board held that it lacked jurisdiction to determine whether the law required employees of another government agency who transfer to the Post Office Department to be paid at the lowest step of the applicable salary level.
 
 
 8
 Plaintiffs thereupon brought suit in the Eastern District of New York, requesting the setting aside of the Board's decision and the issuance of a writ of mandamus ordering their reinstatement to their former jobs with the Department of the Army or, in the alternative, their appointment to a salary step within the Postal Field Service schedual of compensation which would afford them the same compensation they had previously received from the Department of the Army.
 
 
 9
 The District Court remanded the case to the Civil Service Commission to consider whether the Post Office Department was required by law to place plaintiffs in the lowest step of the applicable salary level. The Commission referred the question to the Comptroller General, who decided that the Post Office Department was required to act as it did by Section 501 of the Postal Field Service Compensation Act of 1955, 39 U.S.C. 3551(a). The court thereupon granted summary judgment for defendants, agreeing with the Comptroller General's interpretation of the law, although he recognized that 'the construction is indeed a harsh one which upon a mere paper transfer of employees from one agency to another so sharply reduces the wages of these employees, many of whom are veterans, and all of whom have rendered faithful service.' From this judgment, plaintiffs appeal.
 
 
 10
 The Application of 39 U.S.C. 3551(a).
 
 Section 3551(a) of Title 39 provides that:
 
 11
 'The Postmaster General may appoint any person who has employed in a civilian capacity in any branch of the Government to any position in a regional or district office or to any professional or scientific position and may place him in any step in the salary level of the Postal Field Service Schedule which is less than one full step above the highest basic salary which he received from the United States.'
 
 
 12
 It is defendants' position, with which the Comptroller General and the District Court agreed, that this statute, which permits certain types of employees from other branches of the Federal Government to be appointed at any step within the appropriate salary level which is less than one full step above the highest basic salary he previously received from the Government, by negative implication requires that all other kinds of employees who enter the Post Office Department from other branches of the Government, do so at the lowest step of the appropriate salary level.
 
 
 13
 As originally drafted by the Post Office, the statute permitted the Postmaster General to appoint any person who had been employed in a civilian capacity by the Government to any step less than one full step above his previous highest salary. A Post Office official testified that without this authority employees entering the Post Office from other agencies 'would be forced to take a cut in pay.' Hearings on Postal Pay and Classification before the House Committee on Post Office and Civil Service, 84th Cong., 1st Sess. 34 (1955). Several representatives of postal employees' unions objected to this broad proposal, testifying that it would destroy the morale of existing employees. The Committee then rewrote the bill in substantially the form enacted. The House Report on the bill explicitly states:
 
 
 14
 'Except for appointments to positions mentioned in section 501 (39 U.S.C. 3551(a)), the present practice of the Post Office Department of appointing each employee new to the postal field service to the lowest step of the salary level for the position to which he is appointed * * * is expected to be continued.' H.R.Rep. No. 728, 84th Cong., 1st Sess. 34 (1955), U.S.Code Cong. & Admin.News 1955, p. 2026.
 
 
 15
 The problem is whether a mass transfer of employees to accompany a transfer of activities and operations to the Post Office from another government agency, is an 'appointment' within the meaning of Section 3551(a). Defendants maintain that such a transfer should be considered an 'appointment.' They point out that the representatives of the postal employees' unions who testified before Congress spoke in terms of employees being 'transferred' from other agencies, and argue that any other interpretation would tend to injure the morale of employees with long years of service in the Post Office Department.
 
 
 16
 The testimony of the representatives of the postal employees' unions reveals that their concern was primarily with the possiblility that when a good job within the postal service became vacant, it might be filled by someone outside the postal service, who would be promoted over the heads of long-serving but possibly less efficient postal employees. To give just one example, the Legislative Representative of the National Association of Post Office and General Service Maintenance Employees told the House Committee:
 
 
 17
 'We have been concerned abourt the appointment of employees from other agencies for some time. In several instances postmasters have attempted to bring in custodial supervisors from other agencies while they have qualified employees on the rolls in the custodial service for promotion to the positions. If this section is limited to District and regional offices, it should help our cause considerably.' Hearings, supra, at 443.
 
 
 18
 A distinction may well be drawn between appointments to vacancies in jobs already existing in the Post Office Department-- the sort of appointments described in the testimony just quoted-- and the transfer of employees along with a transfer of operations not previously part of the Post Office Department. It is the latter sort of transfer which is now before us. Upon the facts here presented, it would not be inconsistent with the language or intent of the statute to hold that this kind of transfer is not an 'appointment' within the meaning of 3551(a). This being so, the Post Office Department would not be prohibited from paying to plaintiffs salaries which approximate as closely as possible those previously received from the Department of the Army.
 
 
 19
 The contrary construction urged by the defendants is, as the District Court recognized, 'indeed a harsh one,' since it means that plaintiffs would be forced to take large cuts in pay merely because of a paper transfer of the same activities from one Government agency to another-- a result which would be against common standards of fairness, as well as contrary to the policy of Section 14 of the Veterans' Preference Act, 5 U.S.C. 863, which as extended by executive order provides that no employee in the competitive civil service shall be reduced in compensation 'except for such cause as will promote the efficiency of the service.' It is hard to think of a result which would be more likely to injure the morale and the efficiency of federal civil servants than that urged upon us by the defendants. See Feldman v. Herter, 107 U.S.App.D.C. 239, 276 F.2d 485 (1960), in which the Court upheld an order of the Civil Service Commission directing the Secretary of State to place in a position of 'like status and pay' a plaintiff who had been discharged as clerk of the United States Military Government Court in Germany when the operation of that court had been taken over by the State Department.
 
 
 20
 It may well be that Congress in enacting the statutes involved did not have the situation here presented in mind. In all probability, it did not. Nor is there any 'transfer of function' (a term used by the Board of Appeals and Review) if there be therein by implication the suggestion that the work performed by these plaintiffs changed in any way. Their daily work was in no wise changed by the transfer of the building from Army to Post Office jurisdiction.
 
 
 21
 In final analysis, the court is faced with a choice of deciding whether the explicit mandate of Section 14 as to the rights of these plaintiffs should prevail over the implication which the Comptroller General and the District Court (reluctantly) would read into Section 3551(a). The Congressional intent to protect the rights of employees covered by Section 14 warrants reliance upon this section in adjudicating their rights in the situation forced upon them.
 
 
 22
 In view of our conclusion that 3551(a) does not bar the appointment by the Post Office of the plaintiffs at salary rates which approximate those which they had received from the Department of the Army, it is unnecessary to decide whether the procedural requirements of Section 14 of the Veternas' Preference Act have been complied with.
 
 
 23
 Reversed and remanded with instructions to enter summary judgment for plaintiffs in accordance with this opinion.
 
 
 
 [1]
 The reduction in pay of the various plaintiffs ranges from $313.20 to $1,047.60 a year