Charles **ALBERT** et al.

v.

The **UNITED STATES**.

No. 280–68.

United States Court of Claims.

Feb. 19, 1971.

Carl L. Shipley, Washington, D. C., attorney of record for plaintiffs. John Barry Donohue, Jr., and Shipley Akerman Pickett Stein & Kaps, Washington, D. C., of counsel.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen., L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

Eight civilian employees of the Army Pictorial Center—veterans in both senses—sue to set aside, as invalid, their reclassifications downward in 1966. They were all *photographic technicians* or photographers. In October of that year each was informed by letter that management proposed to reduce his position in grade (two grades in seven instances, and three in the other) after 30 days. Plaintiffs gave written replies protesting these reclassification-demotions which were nevertheless made effective in December 1966. Appeals were then taken to the higher echelon, the Army Materiel Command, with requests for a grievance hearing. This was held, but the Materiel Command affirmed the downgradings as did the Secretary of the Army on a later appeal to his office.[1] This suit followed and both sides have moved for summary judgment. Neither suggests the need for

further evidence. On the record before us, we find the plaintiffs' four points of attack to be unavailing.

1. The first challenge is to the specificity of the letters of proposed reclassification. These were "adverse actions", under the Veterans' Preference Act, 5 U.S.C. § 7511 (Supp. IV 1965–1968), and the Civil Service Commission's regulations, 5 C.F.R. § 771.205(a) (1964),[2] and plaintiffs were entitled to notices which gave specific reasons for the reduction. 5 U.S.C. § 7512 (Supp. IV 1965–1968); 5 C.F.R. § 752.202(a) (1970); see Burkett v. United States, 402 F.2d 1002, 185 Ct.Cl. 631 (1968). The letters told the plaintiffs[3] that their positions had been reevaluated downward, without change in duties, to lesser stated grades, and each employee was supplied with a new job description; they were also informed that the downgrading resulted from the application of Civil Service Commission Position Classification Standards for the series in which their positions fell, and that "the level of difficulty and responsibility in this job is considered a substantial match" for the new grade level, under those standards, "which requires that work be performed independently with a high degree of precision."

We think this notification contained "sufficient particularity" to give the employees "a fair opportunity" to oppose the reclassification, as they did. See Burkett v. United States, *supra,* 402 F. 2d at 1004, 185 Ct.Cl. at 634. They were given the new job descriptions and could compare them with the old ones which they had available; they could measure, for accuracy and completeness, the new descriptions with their own knowledge of the work they actually performed on the job; they could also mea-

---

1. No attempt was made to seek review by the Civil Service Commission. The regulations provide that an employee, like plaintiffs, who appeals within his own agency to the second agency appellate level forfeits his right to appeal to the Commission. 5 C.F.R. § 771.219(d) (1970).

2. Under 5 U.S.C. § 5337 ("Pay Savings"), seven of the eight plaintiffs were entitled to retain their old pay for a two-year period, despite the reduction in grade, but this did not prevent the demotion in grade from being an "adverse action".

3. Plaintiff Murray's letter is also touched on, separately, *infra.*

sure the old and the new descriptions against the Civil Service Commission's Standards. This was sufficient information to contest the proposed action since there was no charge of misconduct or of individual failings on the job. Where the qualifications, capabilities, and conduct of individual employees are not at issue, but only the general classification and duties of a position, "a different criterion exists * * * in so far as the requirement of specificity of reasons is concerned." Neufeld v. United States, 138 F.Supp. 271, 273, 133 Ct. Cl. 825, 827 (1956).

Plaintiffs complain that a meeting had to be held, almost a week after the notices, to apprise them of the reasons for the reclassification, contrary to an Army Regulation which forbids amplifying inadequate charges by such conversations or meetings (Army Civilian Personnel Regulations CPR S1, 2–2(d) (Feb. 1961), quoted in *Burkett, supra,* 402 F.2d at 1004 n. 1, 185 Ct.Cl. at 635 n. 1). But there is no proof that this meeting was held because plaintiffs could not understand the notices or the reasons for the demotions. Rather, the conference appears to have been an effort by plaintiffs and their union to dissuade the Center management from going through with the reclassifications, as well as an explanation by management of what it had already done, without success, to persuade higher echelons to let it abandon the reclassifications. There is nothing to show that plaintiffs, who opposed their reductions vigorously, suffered any lack of understanding of the proposed reclassifications or of the nature of the reasons given by the agency. See Schlegel v. United States, 416 F.2d 1372, 1376, 189 Ct.Cl. 30, 38 (1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970).

2. The second objection is that the reclassifications were arbitrary, capricious, and not supported by substantial evidence. The Government admits, and it is clear from the record, that all the downgradings resulted directly from a general survey of civilian personnel management at the Army Pictorial Center conducted in April 1966 (about six months before the reclassifications) by representatives of Army personnel headquarters (Office of Civilian Personnel, Office of the Deputy Chief of Staff for Personnel, Department of the Army). This general survey covered all phases of the Center's management of civilian personnel and included, in particular, a position survey which strongly recommended the gradelowerings which were ultimately put into effect. Plaintiffs brand this position survey as "cursory, inadequate, slipshod and in no way capable of producing rationally acceptable results." The specific charges are that the headquarters' representatives who interviewed the affected employees, and performed desk audits of their jobs, did not spend enough time and were perfunctory; that some of the Center's employees had not been told in advance of the purpose of these interviews and therefore did not adequately explain their duties; and that other employees had been told by their superiors to volunteer no information to the interviewers and thus failed to give good job descriptions.[4]

■■ In appraising the strength of the foundation for the reclassifications, we must start from the premise that the agency has a certain amount of managerial discretion in this field. The relevant statute, 5 U.S.C. § 5107 (Supp. IV 1965–1968),[5] implies as much, as do the

---

4. There is no suggestion of personal animus toward plaintiffs or of an effort to favor other employees. *Cf.* Eclov v. United States, 137 Ct.Cl. 341 (1957).

5. "Except as otherwise provided by this chapter, each agency shall place each position under its jurisdiction in its appropriate class and grade in conformance with standards published by the Civil Service Commission or, if no published standards apply directly, consistently with published standards. When facts warrant, an agency may change a position which it has placed in a class or grade under this section from that class

principles applied under fairly comparable pieces of federal legislation. *Cf.* Daniels v. United States, 407 F.2d 1345, 1347, 187 Ct.Cl. 38, 41–42 (1969); Madison v. United States, 174 Ct.Cl. 985, 990 (1966), cert. denied, 386 U.S. 1037, 87 S.Ct. 1481, 18 L.Ed.2d 601 (1967); Hofflund v. United States, 154 Ct.Cl. 66 (1961); Eclov v. United States, 137 Ct. Cl. 341 (1957). As these same decisions reveal, a second premise of our evaluation must, of course, be that plaintiffs have the burden of showing arbitrariness in, and lack of support for, the administrative determinations.

■ After reviewing the record, we cannot say that plaintiffs have proved such abuse of discretion or absence of support. A headquarters representative made an individual desk audit and report on the jobs held by four of the eight plaintiffs, enough to cover all of them. His report, though brief, appears unexceptionable on its face, comparing the positions to the pertinent Civil Service Commission standards. The plaintiffs' complaints about the interviews (summarized above) are not significant enough to detract from the cardinal facts that desk audits were made and that the questioned employees had the chance to describe fully what they were doing. It should have been obvious to these long-time federal workers that an official representative from higher headquarters, who was querying them about their jobs, was entitled to the whole truth, whatever his purpose, and not to evasion or short shrift.

In addition to the original report, the matter seems to have been gone into several times by the echelons superior to the Army Pictorial Center. After the April 1966 survey, and before the notices of reclassifications were sent to the plaintiffs in October, the Center's commanding officer unsuccessfully asked for reconsideration by the Army Materiel Command of the suggested downgradings. On plaintiffs' appeals after their demotions, both the Materiel Command and the Office of the Secretary of the Army gave reasoned decisions, not mere summary rejections. And both higher levels had the benefit of the grievance hearing at which the employees' complaints were aired.

In the end, the question on the merits of the reclassifications comes down to a judgment as to the level of difficulty and complexity of the work called for by the plaintiff's jobs, in the light of the Civil Service Commission Standards. There is no showing that any important errors of hard fact were made by the revisers of the classifications; nor are we given any detailed analysis of the individual job descriptions to show in what aspects they are incorrect or too niggardly. The dispute really is that management considers the positions to be less demanding than the employees do. A judgment of this type necessarily invokes discretion and expertise—a weighing of varied factors, tangible and intangible—and we cannot say that on this record management has been shown to be so clearly wrong that its action was arbitrary.[6]

■ 3. The next claim is that the downgradings are invalid because they were put into effect by an official at the Army Pictorial Center who did not have proper delegated authority. The reclassifications and demotions were signed by Mary C. O'Connor, Chief, Civilian Personnel Office, at the Center. Plaintiffs urge that Army directives forbade

---

or grade to another class or grade. Subject to section 5337 of this title [the "pay savings" statute referred to in note 2, *supra*], these actions of an agency are the basis for pay and personnel transactions until changed by certificate of the Commission."

6. Caputo v. Resor, 360 F.2d 770 (C.A. 2, 1966), on which plaintiffs rely, was a wholly different case involving a mass transfer of employees from the Department of the Army to the Post Office Department under a special statute. No issue of managerial discretion, such as we have here, was decided by the Second Circuit.

giving this power to any official lower in rank than the commander of the Center. The point seems more technical and academic than real since there is no doubt that the Center's commanding officer actually knew of and confirmed these decisions, both before and after they were made.[7]

In any event, the argument does not even have technical merit. The Army's Civilian Personnel Regulations do say that authority over civilian personnel management, including position and pay matters, will not be delegated or redelegated below the commanding officer of an independent field activity. CPR A2 (Nov. 1959), Department of Army General Order 32, 1956, pars. 3–4; CPR P30 (Nov. 1960), as amended Oct. 1963. However, these regulations at the same time provide, specifically, that unless such an activity commander "chooses to decide pay systems, schedules, titles, codes, and *grades or pay levels* personally, formal action will be taken to authorize the civilian personnel offices to act for him" (emphasis added); civilian personnel officers are expressly given responsibility for survey programs reviewing all positions and for taking action to see that the results of surveys are promptly implemented. CPR P30, supra, 1–3d(3) and 1–3e(1) and (2). The only way we can read all these provisions in harmony is as allowing activity commanders to retain and exercise these personnel functions if they wish, but simultaneously to authorize their civilian personnel offices to act if the commander does not or does not desire to. The Pictorial Center's personnel officer (Miss O'Connor), who had been duly empowered by the activity commander, was thus acting lawfully under the Civilian Personnel Regulations when she signed the operative documents.

■ 4. The last of the employees' arguments is that plaintiff Murray's reclassification was invalid because it was based solely on the number of persons he supervised, in the teeth of 5 U.S.C. § 5106(c) which provides that "appropriated funds may not be used to pay an employee who places a supervisory position in a class or grade solely on the basis of the size of the organization unit or the number of subordinates supervised." Whether or not this appropriation provision would invalidate a personnel action based solely on the number of subordinates supervised, it is clear to us that we do not have such a case here. The letter to Murray proposing his reclassification did refer specifically to this factor of supervision but, as we read it, that was not the only element suggested in the notice. The same is true of Miss O'Connor's subsequent letter putting the reclassification and demotion into effect. Moreover, the appellate decisions by the Materiel Command and at the Secretary's level both discussed work details in addition to supervision. Thus, the number of subordinates supervised was not the sole basis of the downgrading of Murray's job.

For these reasons, plaintiffs are not entitled to recover. Their motion for summary judgment is denied, the defendant's motion is granted, and the petition is dismissed.

---

7. In addition, the actions were approved, up the line, by the Army Materiel Command and by the Office of the Secretary of the Army, both of which offices considered the problem afresh and without any deference to the position taken by the Pictorial Center. *Cf.* Green v. Baughman, 100 U.S.App.D.C. 187, 243 F.2d 610, 611–612 (1957). Also, as we have already pointed out, the original impetus for the reclassifications came from these higher levels which pushed the Center to make and implement them.