**Herbert BOOKMAN et al.**

v.

**The UNITED STATES.**

**No. 192–70.**

United States Court of Claims.

Jan. 21, 1972.

Edwin J. McDermott, Philadelphia, Pa., attorney of record, for plaintiffs.

Edward M. Jerum, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant. Joseph F. DiStefano, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Judge, DURFEE, Senior Judge, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

Plaintiffs were employed as Supervisory Quality Control Specialists, GS–1903–13, at Defense Personnel Support Center, Defense Supply Agency, Philadelphia, Pa. During their course of employment, plaintiffs duly requested that their positions be upgraded to the GS–14 level. On November 13, 1969, the Director, Office of Civilian Personnel, Defense Supply Agency, issued a written denial of plaintiffs' request. Plaintiffs appealed this decision to the U. S. Civil Service Commission, Philadelphia Region (hereinafter Commission). After consideration of all pertinent information supplied by plaintiffs and the Defense Supply Center, the Commission determined on February 6, 1970, that the proper classification for plaintiffs' positions was at the level of GS–14. Thus, plaintiffs' appeal was sustained.

On February 20, 1970, the Commission received a written request from the Defense Supply Agency, Headquarters, to reconsider its decision. The agency stated it would present full documentation of additional material facts not previously presented, nor considered by the Commission. Upon further examination and reconsideration of its February 6 decision, the Commission issued an amended decision on May 28, 1970, reversing its original decision to upgrade plaintiffs' positions from GS–13 to GS–14.[1]

On June 11, 1970, plaintiffs filed the instant petition alleging that the Commission's first decision of February 6 was final and binding on all administrative, certifying, payroll, disbursing and accounting officials of the Government. Plaintiffs' prayer is for back-pay reflecting the difference between the base pay of a grade GS–13 and GS–14 from Feb. 6, 1970 to date of judgment.

The parties, by their briefs and oral argument, have framed two issues for our consideration: (1) whether the Commission had the power to reconsider its original decision of Feb. 6; and (2) if reconsideration was proper, whether the Commission's revised decision of Feb. 20 was arbitrary, capricious or unsupported by substantial evidence.

We must first address the question whether the Commission's reconsideration of its initial decision of Feb. 6 was proper.[2] Plaintiffs' contention that the Feb. 6 decision was final, conclusive and binding, is based on 5 C.F.R. § 511.610 (1971) which states:

> An appeal decision made by the Commission is final. There is no further right to appeal. The appeal decision shall constitute a certificate which is mandatory and binding on all administrative, certifying, payroll, disbursing, and accounting officials of the Government.

Plaintiffs contend further that the Commission's reconsideration pursuant to agency request is precluded by 5 C.F.R. § 511.611 (1971) which charges the Commission's Bureau of Inspections with the discretionary authority to reopen and reconsider any appeal decision made by a Commission regional office. Defendant, on the other hand, argues that it is the inherent right of every tribunal to recon-

---

1. At the time the agency requested and received Commission reconsideration of the February 6 decision, it had not yet put into effect plaintiffs' change in grade classification from GS–13 to GS–14. The pertinent administrative regulations provide that the effective date of a classification decision issued by the Commission, or a change in classification resulting from an appeal to either an agency or the Commission, is not earlier than the receipt of certificate by the agency or the

date of decision on appeal, and not later than the beginning of the fourth pay period immediately thereafter, unless a subsequent date is specifically stated. 5 C.F.R. §§ 511.701(b), 511.702 (1971).

2. The full Civil Service Commission has delegated authority to its regional offices to make final decisions for the Commission on all position classification matters within their geographical area.

sider its own decision within a reasonably short period of time, absent legislation to the contrary.

Any inquiry into the reconsideration powers of an administrative agency must take full cognizance of the broad policy considerations succinctly defined by Mr. Chief Justice Warren in Civil Aeronautics Board v. Delta Air Lines, Inc., 367 U.S. 316, 321, 81 S.Ct. 1611, 1617, 6 L.Ed. 2d 869 (1961):

> Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what ultimately, appears to be the right result on the other.

It is often the case that reconsideration of a prior decision, within a reasonable period of time, is absolutely essential to the even administration of justice. For example, it may be imperative for the tribunal to consider new developments or newly discovered evidence in order to facilitate the orderly and just resolution of conflict. More frequently, reconsideration is often the sole means of correcting errors of procedure or substance. There may also be instances when unmistakable shifts in our basic judgments about law or policy necessitate the revision or amendment of previously established rules of conduct. *See generally* 2 Davis, Administrative Law Treatise § 18.09 (1958).

The importance of the right of reconsideration is dependent upon the importance of the challenged decision. That is to say, the public's interest in a "right result" is consonant with the expanding application of the decision either in terms of the number of individuals directly or presently affected, or its future precedent value.

In those instances where finality is desirable and the decision of the tribunal is to be given final and irrevocable effect, careful account must be taken of the rights of the individual and the class he represents, and the tribunals procedures must be drawn with the care, precision and procedural safeguards most commonly associated with courts of justice. Haas. v. United States, 67 Ct.Cl. 437, 444 (1929); *Cf.* Spencer v. United States, 121 Ct.Cl. 558, 102 F.Supp. 774, cert. denied, 344 U.S. 828, 73 S.Ct. 29, 97 L. Ed. 644 (1952).

For these reasons, it is the general rule that "[e]very tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify its judgment, decree, or order." 2 Davis, *supra*, at 606.

Congressional recognition of this principle has led to the establishment of a number of statutes which specifically grant the administrative agency the power to reconsider its own decisions, on its own initiative, as long as proper notice is given and the right is exercised within a reasonable time period. *See, e. g.*, 15 U.S.C. § 717r(a) (1970) (Federal Power Commission); 49 U.S.C. § 17(5) (1970) (Interstate Commerce Commission); 15 U.S.C. § 45(b) (1970) (Federal Trade Commission); 29 U.S.C. § 160(d) (1970) (National Labor Relations Board).

In past years, we have been called upon to consider this important question of reconsideration in situations where there are no statutory or administrative guidelines. Quite consistently, we have held that absent contrary legislative intent or other affirmative evidence, this court will sustain the reconsidered decision of an agency, as long as the administrative action is conducted within a short and reasonable time period. Biddle v. United States, 186 Ct.Cl. 87 (1968); Confederated Tribes of Warm Springs Reservation v. United States, 177 Ct.Cl. 184 (1966); Dayley v. United States, 169 Ct.Cl. 305 (1965).

Although none of the above cited decisions deal specifically with the Civil Service Commission, we find their common principle to be entirely consistent and applicable to the facts of the instant suit. Consequently, with respect to plaintiffs' claim herein, we hold that the Commission's Philadelphia Regional Of-

fice possessed and properly exercised its inherent power to reconsider its own decision within a reasonable time period.

Having held that reconsideration was proper under the circumstances, it remains to evaluate plaintiffs' contention that the Commission's amended decision was arbitrary, capricious and not supported by substantial evidence. To do this, we must first analyze the process by which plaintiffs' grades were determined. Inasmuch as plaintiffs were organizationally classified as, and performed the functions of, full Assistant Chiefs, normal classification practice dictated that their positions be evaluated in relation to that of their respective Branch Chief.[3] In other words, the duties and responsibilities of the Branch Chief were appraised, a grade was assigned, and plaintiffs, as full assistants, were assigned a grade one level lower than that of the Chief. The Branch Chiefs' positions were second-level supervisory positions with managerial responsibilities. Accordingly, they were evaluable for grade level determination by the criteria in the Commission's Supervisory Grade Evaluation Guide, Part II.

The Guide delineates four separate factors which are to be considered in determining the correct grade classification. We are concerned herein only with the first three.[4] Factor I, entitled "Base level of work supervised," measures the difficulty and worth of the work performed by those branch employees supervised by the Chief and his assistants. Plaintiffs do not contest the Commission's determination that the base level of the work supervised in both branches of the Technical Operations Division was GS–12.

Factor II is entitled, "Nature and extent of supervisory responsibility."

This is an inquiry into the Chief's involvement in directing subordinate workers, and in dealing with personnel management matters affecting such workers. Under this factor, two degrees of responsibility are defined—Degree B and Degree A. Once again, plaintiffs do not contest the Commission's determination that Degree A, the higher of the two possible designations, should be assigned to this factor with respect to the Branch Chiefs. The Guide provides for a tentative grade to be assigned for Degree A positions of two levels above the base level of the work supervised. Thus, the Chief was graded for Factors I and II as GS–14.

The controversy centers around the Commission's evaluation of Factor III, which is entitled, "Managerial aspects." According to the Guide, Factor III measures:

\* \* \* aspects of directing and accomplishing work which involve difficulties and responsibilities not adequately measured in Factor II. These aspects involve major recommendations and actions which have a direct and substantial effect on the organization and programs managed, of the type shown in the following categories:

*Category No. 1: Major decisions affecting the basic content and character of the operations directed*

\* \* \* \* \* \*

*Category No. 2: Basic program planning and evaluation activities*

\* \* \* \* \* \*

*Category No. 3: Decisions on organizational improvements*

---

3. For purposes of grade classification, it is of no significance whether the position of Branch Chief is civilian or military. In this case, the Chiefs of the Technical Services Branch and the Quality Assurance Branch, of the Technical Operations Division, were both military men.

4. Factor IV, entitled, "Special additional elements affecting supervisory work,"

deals with "those special elements, conditions, or situations which may make supervisory work substantially more difficult or responsible, and the true effect of which has not been measured in Factors I, II, or III." There is no claim by either party that this factor must be taken into consideration in evaluation of the duties and responsibilities of the Branch Chief.

\* \* \* \* \* \*

*Category No. 4: Decisions which have an impact on relationships with other groups*

\* \* \* \* \* \* .

*Category No. 5: Decisions substantially affecting economy of operations*

\* \* \* \* \* \*

*Category No. 6: Decisions involving key officials*

\* \* \* \* \* \*

Supervisory positions vary a great deal in the degree to which they have managerial aspects which constribute to the grade determination. In some positions such aspects are insignificant. In many others, they are of limited significance. In still others, they may be sufficient to influence the final grade. A position covered by this guide *has significant managerial aspects* when it is concerned with matters of the type described in *at least three* of the managerial categories above.

In the decision rendered on February 6, 1970, the Commission found that "[i]mportant aspects of various managerial categories" listed under Factor III were attributable to the Chief's position. This managerial credit was incorporated into the Chief's grade level classification by raising his grade one additional level, for a final grade classification of GS–15. It followed that plaintiffs, as full assistants, were graded one level lower, for a final grade classification of GS–14. This was precisely the level plaintiffs sought by means of their appeal. However, fourteen days later, on February 20, 1970, Defense Supply Agency Headquarters requested reconsideration of the February 6 decision. It was the stated belief of the agency officials that certain managerial aspects credited to the Branch Chief, in fact, were not present at that level of responsibility. The Commission's reconsideration led to an amended decision dated May 28, 1970, which stated in part:

\* \* \* We now find that significant managerial aspects, as envisioned in the Supervisory Grade Evaluation Guide, Part II, are not present in the Branch Chief's position. \* \* \* To sum up, while the responsibilities of the Chief \* \* \* include some parts of the managerial categories described in the Guide, these responsibilities are not considered to represent the level of significance characteristic of those described for Factor III in the controlling standard. Therefore, *no additional credit can be allowed for this factor.* [Emphasis supplied.]

The result, of course, was that the Chief's amended grade was classified at GS–14, and plaintiffs were graded one full level lower at GS–13. It is this determination which plaintiffs challenge.

■ The function of a reviewing court in a civil service case such as this is not to "undertake to pass on qualifications of an employee for any given post", Barger v. United States, 170 Ct.Cl. 207, 214 (1965), nor to determine the proper functions and responsibilities of a particular Government position. Congress has granted the Civil Service Commission broad authority in regard to the classification of Government employees. 5 U.S.C. § 5112 (1970) specifically authorizes the Commission to:

(1) ascertain currently the facts as to the duties, responsibilities, and qualification requirements of a position;

(2) place in an appropriate class and grade a newly created position or a position coming initially under this chapter;

(3) decide whether a position is in its appropriate class and grade; and

(4) change a position from one class or grade to another class or grade when the facts warrant.

■ These are functions which, by their very nature, require discretionary judgments as to the level of difficulty or complexity of work, and the degree of attendant responsibility. In Albert v. United States, 194 Ct.Cl. 95, 437 F.2d 976 (1971), the court considered the reclassification-demotions of eight civilian

employees of the Army Pictorial Center. We categorized that controversy as follows:

> * * * The dispute really is that management considers the positions to be less demanding than the employees do. A judgment of this type necessarily invokes discretion and expertise —a weighing of varied factors, tangible and intangible * * *. *Albert, supra*, at 101, 437 F.2d, at 979.

As was true in *Albert*, plaintiffs must bear the burden of showing arbitrariness in, and lack of support for, the administrative determinations. *Albert, supra*, at 100, 437 F.2d 976. We are convinced, after careful review of the record, that plaintiffs have failed to substantiate any abuse of discretion or absence of support for the Commission's findings. Clearly, there has been a distinct failure of proof.

The Commission's amended decision of May 28, 1970 was based on information derived from numerous and diverse sources. Personal interviews were conducted with both plaintiffs, the Chief of the Technical Operations Division and his civilian deputy, the Chiefs of the Technical Services Branch and the Quality Assurance Branch, as well as other civilian personnel office officials. The Commission also reviewed other corroborative information of record, such as position descriptions, organizational charts and functional statements. In contrast, plaintiffs' offer of proof is based almost entirely upon debatable interpretations of out-dated position descriptions, self-serving affidavits and a great many vague generalities which unsuccessfully purport to challenge the specific findings made by the Commission. Further, it is quite significant that plaintiffs did not allege and could not prove that the Commission erred on important questions of fact, or that the Commission arbitrarily rejected or capriciously considered any of the available evidence.

The Commission's ultimate finding was that the actions and decisions of the Branch Chief were subject to higher authority, and that the Branch Chief carried out policies and procedures established by that higher authority. Plaintiffs' contrary allegations, supported almost exclusively by intermittent references to position descriptions of questionable validity, fall far short of the standard of proof judicially imposed by such decisions as Albert v. United States, *supra*.

Indeed, we believe it unnecessary to recount specifically the Commission's findings or plaintiffs' challenges thereto. It is sufficient to state that we find plaintiffs' offer of proof to be entirely inadequate to sustain their burden of showing arbitrary, capricious or unsupported administrative action. Accordingly, we hold that the Commission's decision of May 28, 1970 was not arbitrary, capricious or unsupported by substantial evidence. We regard that decision as a reasonable and proper exercise of the Commission's administrative discretion. Therefore, plaintiffs are not entitled to judgment.

Plaintiffs' cross motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and the petition is dismissed.