Edward **KAVAZANJIAN** et al.,
Plaintiffs,

v.

U. S. **IMMIGRATION AND NATURALI-ZATION SERVICE** et al.,
Defendants.

No. 69 Civ. 3074 (MP).

United States District Court,
S. D. New York.
Aug. 18, 1975.

---

Fried, Fragomen & Del Rey, New York City, by Martin L. Rothstein, New York City, for plaintiffs.

Paul J. Curran, U.S. Atty., for the Southern District of New York, New York City, by Taggart Adams, Asst. U. S. Atty., for defendants.

## OPINION

POLLACK, District Judge.

Plaintiffs in this suit seek declaratory and injunctive relief and back pay in connection with their assertions that they were and are improperly denied classification of GS (General Schedule)–12 investigators of the United States Immigration and Naturalization Service (INS). For the reasons stated

*infra,* the relief requested must be denied and the complaint dismissed.

This action was commenced on July 15, 1969, by *inter alia* eleven named individual plaintiffs, ten of whom were at this time classified as GS–11 investigators for the New York Office of INS. The eleventh individual plaintiff, Edward Kavazanjian, had been a GS–11 investigator in the New York office until June 1967 when he was raised to class GS–12 (his quest herein is therefore for back pay). The eleven named plaintiffs represent other investigators similarly situated pursuant to a class action order entered on consent of the parties on August 18, 1971. Also plaintiffs in this action are Immigration and Naturalization Service Local No. 1917, American Federation of Government Employees, AFL–CIO, and the National Council of Immigration and Naturalization Locals.

Named as defendants in this action are the INS, the United States Civil Service Commission (CSC), the United States, and named members of the Civil Service Commission.

▮▮ This Court has jurisdiction to review the actions of the INS and the CSC as they affected these plaintiffs pursuant to 5 U.S.C. § 702, which states that:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

The Court's review is, however, a limited one. Plaintiffs have the burden of showing that the actions of the INS and/or the CSC were, in the words of 5 U.S.C. § 706(2)(A) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Cf. Almeda v. United States,* 453 F.2d 1397, 197 Ct.Cl. 81 (1972); *Albert v. United States,* 437 F.2d 976, 979, 194 Ct.Cl. 95 (1971); *Leopold v. United States Civil Service Commission,* No. 71 C. 292 (E.D. N.Y. Mar. 29, 1974); *Brech v. United States Immigration and Naturalization*

*Service,* 362 F.Supp. 914 (S.D.N.Y. 1973). It is to be noted, in connection with the requested review of the CSC's decisions, that: "The function of a reviewing court in a civil service case such as this is not to 'undertake to pass on qualifications of an employee for any given post' . . . nor to determine the proper functions and responsibilities of a particular Government position". (citations omitted) *Bookman v. United States,* 453 F.2d 1263, 1267, 197 Ct.Cl. 108 (1972).

Plaintiffs' demands for back pay, which each has limited to $10,000, rely for jurisdiction on 28 U.S.C. § 1346(a)(2), which authorizes suits against the United States in federal district courts for amounts not exceeding $10,000; and plaintiffs' demands for peremptory relief have been posited under 28 U.S.C. § 1361, which authorizes mandamus of federal officials and agencies.

The individual plaintiffs in this suit are, or were at the times complained of, investigators for INS. The INS is charged with overseeing problems involving immigration into this country, naturalization of citizens, and deportation of aliens. Depending on their specialties, INS investigators are denominated as either criminal investigators or general investigators and have responsibility to uncover frauds against the immigration laws, and to apprehend, arrest, and institute denaturalization and deportation proceedings where appropriate against aliens found to have violated federal laws. Some of the investigators additionally have liaison duties with other law enforcement agencies.

The investigators, as federal employees, serve in positions which are classified under the General Schedule of the Government Organization and Employees Act, Title 5, United States Code. According to that Schedule, jobs are slated at different grade levels, which determine the incumbent's salary and his or her fringe benefits. Non-supervisory investigatory positions at INS may

be classified at GS–9, GS–11, and GS–12. The standards for determining whether an investigator's job fell within class 9, 11, or 12 during the period relevant to this suit are set out in a document entitled "Supplement to the Position Classification Standards for the General Investigating Series, GS–1810–0, for Positions in the Immigration and Naturalization Service, Department of Justice", issued by the CSC in October 1959.

It is the responsibility of each agency to place each position under its jurisdiction in the appropriate class and grade in conformance with standards published by the CSC. 5 U.S.C. § 5107. The INS for some years after 1959 did not classify any of its non-supervisory positions as GS–12, concluding that what GS–12 level work existed in its offices would be handled by supervisors, who were classified at GS–12 and above. As will be explained in more detail *infra*, plaintiffs and their fellow investigators in the New York INS office were instrumental in the change of this INS policy in 1967.

The CSC has the responsibility to oversee the classification of all government employees subject to such classification. It is given authority to ascertain the facts concerning government positions, to decide whether they are in their appropriate grade and class, and to change a position from one grade or class to another when the facts warrant. 5 U.S.C. § 5112(a)(1, 3 & 4). Upon request of an affected employee, the CSC must exercise its authority. 5 U.S.C. § 5112(b). The process by which an employee requests the CSC to consider the propriety of his position's grade has been referred to by the parties as a classification appeal. This "appeal" is not, however, an appeal from any specific decision of the agency not to reclassify a job, and an employee need not petition his or her own agency for reclassification before invoking CSC review.

Plaintiffs allege that some of the investigators attempted to persuade the INS to upgrade their positions as early as December 1963 and that the INS not only refused to act upon these requests for reclassification in good faith but, by misleading the investigators as to its intentions, also prevented them from filing appeals with the CSC before 1966. Plaintiffs' allegations of bad faith and evil motive on the part of the INS in responding to these early inquiries are simply not borne out by the credible evidence presented to this Court.

In 1966, fifty-two investigators in the New York INS office whose positions were classified as GS–11 did file classification appeals with the CSC. This simultaneous action was stated by the CSC official involved to be the largest mass appeal filed with the CSC up to that date. The appeal was organized by plaintiff Kavazanjian in connection with the union to which he and other investigators belonged. Named plaintiffs Kavazanjian, Bertele, Flasterstein, D'Amico, and Farrell were among those filing appeals.

Mr. Samuel Friedman was at that time a personnel management specialist with the CSC whose role it was to adjudicate classification appeals submitted by Federal employees in the New York region. He interviewed Kavazanjian and one Jack Lazurus, another investigator-appellant who was president of the plaintiff's union local, at some length. There is dispute about the amount of time he spent with some of the other appellants in discussing their casework. All of the appealing investigators were audited in 1966. (Mr. Friedman's assistants, personnel management specialists, talked to a few of the appealing investigators.) The audits were reasonably sufficient under all the facts and circumstances and done in good faith with a knowledgeable and perceptive understanding of the matters involved.

It developed from his survey of the work performed by the appealing investigators, as would indeed appear inevitable from the breadth of the applicable standards, that many of the appellants were doing work that would be classified

as GS–12 part of the time and work that was GS–11 or less part of their time. The rule of the CSC in such cases is that an employee is to be upgraded if he or she is doing the higher grade work a majority of the time. *Position-Classification Standards for Positions Subject to the Classification Act of 1949, as Amended,* U.S. Civil Service Commission, Bureau of Programs and Standards, Standards Division (1967) at 25–26. There is, however, an exception to this rule under which, in certain circumstances, an employee may be upgraded if he engages in the higher grade work for a "substantial" portion of his time. *Id.* at 26. Whether the exception should have been applied to these appeals is one of the central issues of this suit and will be discussed *infra.*

The CSC, through Mr. Friedman, utilized the majority of the time rule in deciding the 1966 appeals and has continued to use it in considering appeals by employees in the New York INS office. This standard was appropriate in the circumstances and fairly and appropriately applied.

On February 1, 1967, the New York Regional Office of the CSC ruled on the appeals of the INS investigators. Eleven were upgraded to GS–12, one was downgraded to GS–9, and thirty-six were found properly classified as GS–11. (Four had withdrawn their appeals before decision.) Six of the named plaintiffs, including Mr. Kavazanjian, were involved in the appeal; they were among those whose grades were not changed. These decisions bear no indication of disregard of the work evaluated or of the Position Classification Standard nor have they been credibly established to be deficient in fairness either in consideration or result.

In March 1967, twenty-five investigators, including the six named plaintiffs referred to above, appealed the denial of their classification appeals to the CSC's Bureau of Inspections in Washington, D. C. There was considerable testimony at trial concerning attempts by individual investigators to see the files which contained the material upon which the decisions of the original classification appeals were based. Some investigators visited the New York office of the CSC and were shown files which several testified were either empty or nearly so. The apparent reason for this phenomenon is that the important papers in the files were in transit, or located in Washington for consideration of the second level appeals before the time the appellants sought to view them in New York. Plaintiffs' attempt to ascribe bad faith or evil motive on the part of the CSC to these incidents has not been convincing. Nor does the credible evidence establish by a fair preponderance that evaluations were not made or were faulty or not consistent with the applicable standards.

The appeal to the Bureau of Inspections necessitated some further interviews with appellants, apparently conducted by a Mr. Van Tassel. There was testimony that Mr. Van Tassel conferred with Mr. Friedman as to the meaning of the latter's notes in some instances, action which this Court does not deem to have been improper, suspect or prejudicial, in the circumstances. The Bureau of Inspections upgraded twelve investigators, including Mr. Kavazanjian, to GS–12. It denied the remaining thirteen appeals, including those of the other five named plaintiffs involved.

In 1967, when the INS was notified that several of the investigators in its New York office had been reclassified in GS–12, it initiated a nationwide survey of its offices to determine where GS–12 work was being done and whether other investigators should be reclassified as GS–12. Mr. Benedict Ferro, then Chief of Classification of INS, testified that his classifiers, in determining who should be reclassified as GS–12, used the same criteria as the CSC, "However, we didn't always come up with the same decision," he said.

Plaintiffs seek to have this Court draw an inference of arbitrariness from the fact that the CSC and INS, us-

ing the same standards, could disagree on whom should be classified in GS–12. However, the applicable standards are not, and probably could not be, so precise that two honest human beings could not disagree in evaluating any given task. The inference suggested by plaintiffs is not warranted by the evidence and consequently will not be drawn by the Court.

The INS survey resulted in the reclassification of some forty-five investigators across the nation. The survey also found that in some offices, of which the one in Los Angeles was cited as an example, there was a great deal of GS–12 work being done, but few investigators were spending the majority of their time on such work. In these cases, the INS decided to establish new GS–12 positions to handle the higher grade work. Since many new positions were created in various offices, the INS sought to avoid the disruption to its affairs that would have resulted from the use of its normal method of filling new positions. Use of that method would likely have involved the transfer of investigators from office to office as those highest on merit lists moved into the new positions. Instead, the INS petitioned the CSC for and received from it permission to promote those investigators in each affected office who had been doing the greatest percentage of GS–12 work previously. After the promotions, the higher grade work in the office was to be channeled to these investigators so that the majority of their time would be spent on such work.

Plaintiffs see arbitrariness on the part of the INS, and of the CSC in approving this action, in promoting some investigators who did less than a majority of GS–12 work in some offices while failing to reclassify investigators in the New York office who were doing a similar percentage of the higher grade work. Seen from the perspective of the agencies, however, this action was reasonable, and arbitrariness or capriciousness in the disparity of treatment complained of is not factual or a justifiable inference from the evidence.

In their post-trial brief, plaintiffs charge that after the 1966 classification appeals the INS promoted many investigators in the New York office who were performing GS–12 level work less than thirty percent of their time while passing over investigators who were performing GS–12 level work for at least forty percent of their time. Plaintiffs have apparently taken the thirty and forty percent figures from the CSC evaluations of the work of investigators made by the CSC at the time of the 1966 appeals. By ignoring the later evaluations made by INS on which INS actually made the promotions, the plaintiffs are able to make their unfounded argument that an investigator doing GS–12 work only thirty percent of his time was upgraded to GS–12 while one doing such work forty percent of his time failed of promotion. Plaintiffs thus seek to spell out arbitrariness on the part of the INS. Since the later of the evaluations, that of the INS, was the guide on which the INS acted it may properly be assumed that the amount of time the investigators in question spent on higher level tasks varied from the time of the CSC audit to the time of the INS audit and, at all events, as noted *supra*, the classification standards are subjective to the extent that the INS could have in good faith come to different conclusions about the grade level of an investigator's work than those reached, also in good faith, by the CSC. The Court finds no arbitrariness proven in the circumstances of which plaintiffs complain.

In February 1968, named plaintiff Scalcione filed a separate classification appeal, which was denied by the regional office of the CSC on May 31, 1968. This result could be fairly and reasonably reached on the facts and circumstances involved. The regional office's decision was subsequently affirmed by the CSC. The evaluation by the CSC could reasonably be made on the evi-

dence and there is no sufficient basis to characterize its evaluations as uninformed or arbitrary.

In May 1968, named plaintiff D'Amico filed a second classification appeal (he had been involved in the 1966 group). D'Amico, as a witness at trial, testified that one large case, which he considered to have involved work of GS–12 calibre, was taken away from him subsequent to his filing of his appeal. D'Amico represents a sub-class of plaintiffs who allege that higher grade work was taken away from them by the INS at the time of their classification appeals to prevent their being upgraded. If the CSC did not consider the work D'Amico, or others similarly situated, were doing at the time of the appeal, it is arguable that the CSC would have violated its responsibility under 5 U.S.C. § 5112(a)(1) and (b) to, upon the request of an employee, "ascertain *currently* the facts as to the duties, responsibilities, and qualification requirements of a position". (emphasis supplied) *See Adams et al v. U. S. Civil Service Commission et al.*, Civ. Action No. 359–72 (D.D.C.), order of remand to the CSC, filed Nov. 9, 1973.

However, it has not been proven that the CSC did not consider the work that D'Amico, and others similarly situated, were doing at the time of appeal. There was testimony by Mr. Friedman that there was no CSC policy not to consider work taken away from an appellant before his audit but after his appeal. Mr. Friedman indicated that, while CSC policy was flexible, it was his practice to consider work that an appellant had done within a month or two of the time of the audit of that appellant.

▆▆ Plaintiffs have also attempted to impute to the INS a motive of denying D'Amico his due in the removal of GS–12 work from him subsequent to his filing of a classification appeal. The removal, however, is consistent with management's duty to assign work which has become more difficult to investigators who are classified as GS–12. Absent any other evidence to support plain-

tiffs' contention, the Court will not infer an improper motive from the mere fact of the reassignment.

In June 1968, sixteen new classification appeals were filed by investigators seeking reclassification of their positions from GS–11 to GS–12. Five of the named plaintiffs, Costas, Flasterstein, Greenfield, Martin, and Opolion, were within this group. On November 8, 1968, the appeals of fourteen of the sixteen investigators (two appeals having been withdrawn) were denied by the regional office of CSC. These denials were not appealed to the Bureau of Inspections.

There was some confusion about the auditing process involved in the adjudication of the classification appeals filed in June 1968. The INS, in order to prepare its input into the classification appeal process, attempted to audit the work of appealing investigators. The investigators, or some of them, apparently viewing the INS as their adversary in the classification appeals, refused to speak to the INS classifiers, though they allowed them to review the cases on which the appellants had been working.

The INS classifiers did not recommend reclassification of any of the investigators appealing, but they did find that there was more GS–12 work being done in the New York office than had been realized. Three new GS–12 positions were created to handle this work. The INS did not fill the new positions by promoting the investigators spending the highest percentage of their time on GS–12 work, as it had done in 1967 when new positions were created at many other offices across the country. It instead utilized its normal promotion procedures. Testimony by Mr. Ferro, the INS chief classifier at the time, indicated that the normal promotion process was used in the New York office in 1968 because there was no reason not to do so. The potential for disruption that was present in the nationwide creation of new positions in 1967 was not a fac-

tor in the creation of three new positions in the New York office in 1968.

The named plaintiffs, and some of their fellow investigators who appeared as witnesses at trial, seem genuinely convinced that their employer, the INS, has been guilty of consciously determining, and conspiring with the CSC, to deprive them of their right to have their jobs reclassified as GS–12.[1] Whatever this may say about the quality of labor-management relations in the New York office of the INS, it is not this Court's finding that the plaintiffs' view of the affairs described above is correct.

It is important to recognize at the outset that the distinctions between GS–11 and GS–12 work are not clear and are subject to variant interpretations by reasonable men. For that reason, and on the testimony and documentary evidence before it, this Court finds that the INS's original determination that the GS–12 work in its offices was minimal and that what there was of it was done by supervisors was not in bad faith and was neither arbitrary nor capricious, though, as subsequent events point out, it may have been erroneous.

■■ Plaintiffs correctly identified their administrative remedy when they filed classification appeals with the CSC. It appears, however, that they expected a forum for their grievances somewhat different from that which

they invoked. The statute, 5 U.S.C. § 5112, requires that the CSC ascertain currently the facts, decide whether the position in question is in its appropriate class and grade, and change the class or grade when the facts warrant. There is no requirement that an adversary hearing be held; nor is there a requirement that any particular type of audit take place or that appellants be interviewed for a given length of time. Cf. 5 C.F.R. ¶ 511.607. The CSC has latitude as to the manner in which it will perform its statutory function, and this Court finds that it did not act arbitrarily[2] or capriciously or in abuse of its discretion in processing the appeals involved herein.[3]

Some plaintiffs, such as Mr. Kavazanjian, who were reclassified by the CSC, seek back pay for the period of time during which they assert they were doing GS–12 work before the time in which they were reclassified. The demand is supported, in the case of Mr. Kavazanjian, by his testimony that he was doing the same work before reclassification as he was doing at the time his position was upgraded.

■■ The statutory remedy for employees who believe that they are doing work that entitles them to reclassification of their positions is the process— appeals to the CSC pursuant to 5 U.S.C. § 5112—described above. The CSC may reclassify a position, but there is no pro-

1. A document that lends support to the plaintiff's belief is an undated letter from John W. Macy, then Chairman of the CSC, to the United States Attorney General conveying a CSC evaluation of personnel management activities in the INS. (The evaluation, a fifty page document, is dated January 1968). In the letter, Mr. Macy noted that in the INS: "The position classification program has been used to keep grades down for employees without regard to the actual level of work being performed." This Court has considered this letter, and the accompanying report, together with other documentary and testimonial evidence in reaching its own conclusion.

2. Plaintiffs point to the fact that the defendant CSC has not been able to find the notes

of the audits made in 1966 and 1968 in most cases and to the poor organization of the administrative records prepared by the CSC for submission to the Court, suggesting that both illustrate arbitrariness in the CSC classification appeal procedures. These factors have been considered by the Court, but are not found to have much probative weight. These after-the-fact lapses in administrative efficiency, though inconvenient for the factfinder, do not amount to arbitrariness in the processing of the actual appeals.

3. It is worthy of note that 23 of the 48 investigators in the New York INS office who submitted classification appeals for decision in 1966 had their positions upgraded by either the CSC's regional office or its Bureau of Inspections after further appeal.

vision for retroactive reclassification and award of back pay.[4] This being so, this Court can on no theory grant plaintiffs the relief they request.

## MAJORITY OF TIME OR SUBSTANTIAL TIME

█ As noted above, an important point of contention in this case, deserving special attention herein, is the question of the propriety of the application of the so-called majority of time rule[5] by the CSC and the INS in considering requests for reclassification in the New York office. In some areas of the country, an exception to the majority of time rule has been made in upgrading positions where substantial time has been spent on work of higher grade. This exception is made in confined circumstances as explained below. Plaintiffs contend that the use of the majority of time rule in New York illustrates arbitrariness on the part of INS and of the CSC, which oversees the INS classification program. The use of the substantial time exception elsewhere but not in

New York, plaintiffs say, is also a violation of the purpose of the Civil Service system, as set out in 5 U.S.C. § 5101(1)(A), that the principle of equal pay for substantially equal work be followed.

As explained in a letter by Mr. Alvin Norcross, Acting Director of the CSC Bureau of Inspections, to Mr. Kenneth Stallo, Director of Personnel, Department of Justice, dated July 9, 1969, in some offices, of which El Paso was an example in 1969, INS investigators are assigned a geographical region in which they must handle all the work that arises. In that situation, the higher grade work cannot be efficiently distributed to employees in higher grade positions. In such cases, where the higher grade work is paramount in influence, takes up a substantial amount of the employee's time, and requires materially higher qualifications than the lower grade work, the INS or the CSC reclassifies the position upward to the higher grade under the exception to the majority of time rule. This is done so that the

---

4. Waiver of sovereign immunity by the United States and its agencies would be necessary to allow any award of back pay in this type of situation, and that waiver would need to be explicit. *Cf. Brown v. General Services Administration*, 507 F.2d 1300, 1307 (2d Cir. 1974), *cert. granted*, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975). No such waiver is apparent here.

5. The following excerpt from *Position-Classification Standards for Positions Subject to the Classification Act of 1949, as Amended*, U.S. Civil Service Commission, Bureau of Programs and Standards, Standards Division (1967) at 25–26 is the source of this rule and its exception:

Classifying Mixed-Grade Positions Under the Classification Act of 1959

Only general guides can be offered because of the fact that mixed-grade positions occur under so many different circumstances.

In classifying the great majority of positions the principal duties and responsibilities will govern: i. e., those that take up at least a *majority* of the employee's working time. No question of mixed grades need be raised where the principal duties are also paramount or preponderant

from the standpoint of influence or weight in the job evaluation and grade classification.

Sometimes, however, a mixed-grade position may involve a set of duties and responsibilities or a task which, although enhancing the relative value of the job, and paramount in influence or weight, does not consume a *majority* of the employee's time. In that event, the position *may* be classified on that basis.

Since in such instances the basis for the grade is something less than a *majority* of the employee's working time, the following conditions should be observed:

1. The duties and responsibilities serving as the basis for the grade decision are paramount in influence or weight, occupy a *substantial portion* of the employee's working time, are a regular or recurring part of the job, and are not of an emergency, infrequent, incidental, or temporary nature.

2. They are so different from the other duties and responsibilities as to require materially higher qualifications, which are, or will be, reflected in the qualification standards used in recruiting, testing, and selection. (Emphasis added).

agency can be assured of attracting and holding people who are capable of handling the higher grade work.

The CSC is cautious about applying the substantial time exception, in part because of the danger that maldistribution of the workload in an office might result in a large number of people doing the higher grade work a substantial portion of their time where proper management would have a few people in higher grade positions doing the higher grade work that came in. The proper solution in such offices where much higher grade work existed would be the creation of new higher grade positions, as the INS did in 1967 across the country and again in 1968 in New York, and assignment of the higher grade work to the occupants of those positions.

This policy seems to this Court to make sense, and at the least it is neither arbitrary nor unreasonable. This Court finds on the evidence presented to it that the use of the majority of time rule in adjudicating classification appeals in the New York INS office is not arbitrary, capricious, nor an abuse of discretion on the part of INS or the CSC.

### SUMMARY OF CONCLUSIONS

The conclusions on the issues presented in this case can be summarized succinctly as follows:

On the basis of the evidence adduced and circumstances shown and the resolution of issues of credibility reflected in the Court's factual determinations, the plaintiffs have failed to show that defendant agencies acted, in connection with the matters here in dispute, arbitrarily, capriciously, in abuse of their discretion, or otherwise not in accordance with law. The determinations reached by such agencies respectively were based on a consideration of the relevant factors and there has been no demonstration by plaintiffs of any clear error of judgment in respect to such determinations. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S.

402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Accordingly, judgment is granted to the defendants and the complaint is dismissed, with costs.

The foregoing constitutes the Court's findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

So ordered.